ANDREW, J.T.C.
The issue presented in this state tax case is whether plaintiff, Thomson-Leeds Company, Inc. (Thomson-Leeds), a Delaware corporation, with its principal office in New York City, had sufficient business activities in New Jersey to require it to file corporation tax returns under the Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 et seq., or, in the alternative, the Corporate Income Tax Act (CIT), N.J.S.A. 54:10E-1 et seq.
The facts were stipulated. Because this matter is one of those types of cases which are intensely fact-sensitive some factual detail is appropriate here. Thomson-Leeds is engaged nationwide in the business of designing and selling custom-ordered advertising displays that promote consumer products. Although Thomson-Leeds itself does not manufacture any of the displays, it does subcontract with a variety of independent component manufacturers and suppliers, some of which are located in New Jersey, to produce its unique displays according to individual clients’ specifications. Thomson-Leeds derives its revenues from the sale of these displays which are utilized at the point of purchase. Thomson-Leeds has no offices, property, or employees based in New Jersey, nor does it conduct any local media advertising of its services. The corporation does, however, send brochures to present and prospective clients in and outside New Jersey and it does advertise in national trade journals.
*28 Plaintiff corporation has never been specifically authorized to do business in New Jersey, and has never filed a corporate tax return in this State. During the disputed tax period, August 1, 1981 to March 31, 1983, the corporation employed three New York-based sales representatives who visited seven current clients and initiated contacts with eight other prospective ones in New Jersey. Out of a total of 332 orders with a gross volume of $25,563,354, New Jersey orders totaled 13 and produced gross receipts of $211,855 (approximately .9% of plaintiffs gross volume). Thomson-Leeds’ salesmen work on a commission basis carrying samples of the company’s displays in their own automobiles. The corporation does not reimburse its sales representatives for expenses, nor does it maintain a local telephone listing or mailing address.
The corporation instructs its sales representatives to initiate and maintain a continuous relationship with potential customers both in New Jersey and elsewhere. The typical procedure of the company’s salesmen is to schedule a meeting with a client, usually at the client’s place of business, at which they discuss the product to be displayed, type of advertising and quantity needed, as well as the budget for the project. After this initial presentation, the sales representative returns to the New York office. The client’s ideas and needs are translated into several rough drawings by the company’s art department, and subsequently, presented to the client, either in New York or at the client’s business address for suggestions and changes. The representative then returns to the art department and makes the revisions.
At a second presentation to the client, a full color sketch and three-dimensional model of the display sketch is discussed for further modifications. This second encounter is usually held in New York, but occasionally at the client’s business location. Sometimes, an artist or designer may accompany the salesman to answer questions or to make design changes. On one such occasion, a designer visited a New Jersey client with a sales representative.
*29 Once the design is approved, someone in the New York office estimates the cost and relays this information by telephone or by mail to the client. Subsequently, if it accepts the estimate, the client then submits a purchase order to Thomson-Leeds in New York City. Any reorders of displays are handled in a similar manner. The fabrication and final assembly of the client’s order is done by a variety of manufacturers and suppliers both in and outside of New Jersey. Thomson-Leeds tracks the production of the advertising display, and, as problems arise, periodically contacts clients by telephone or by scheduling follow-up meetings, again in New York or at the client’s business. During the disputed tax years, two such meetings occurred in New Jersey.
Thomson-Leeds retains the right of final approval of displays both before placing the client’s final order and before delivery to the client. It arranges a meeting with the client and shows samples of the completed prototype to the client in the New York office or at the client’s location. Plaintiff pays all its suppliers, and retains the rights to the specially-created tools, dies, and molds which are eventually passed on to the client. Billing is done from the New York office, and payments are received by mail. Delivery is F.O.B. shipping point, i.e., the final assembly manufacturer.
In August 1981, at the request of some of its suppliers, Thomson-Leeds registered to obtain sales tax authority for issuing resale certificates for its purchases for resale of display components from New Jersey manufacturers. The application designated Thomson-Leeds as a service company in the point-of-purchase business. As a result of the application, in May 1982, the Director of the Division of Taxation advised the corporation that it was subject to the CBT as of August 1981. Contesting the Director’s determination, plaintiff filed a complaint with the Tax Court in May 1983. Subsequently, in a second determination dated July 24, 1983, the Director advised plaintiff that, in the alternative, it was subject to the CIT. To date, plaintiff corporation has refused to file a corporate tax return under *30 either tax statute and, thus, has not been assessed any specific amount of tax.
Plaintiff contends that its business presence in New Jersey is so slight that it does not meet the required statutory criteria of the CBT to justify the imposition of a privilege tax for conducting business in the State. It argues that it does not meet the definitional requisites for “doing business,” N.J.A.C. 18:7-1.9, nor does it own or employ capital or property, or maintain an office in New Jersey. N.J.S.A. 54-.10A-2. Plaintiff emphasizes that the corporation’s contacts with the State consist solely of “sporadic and irregular” forays into New Jersey by its sales representatives to promote company business. Alternatively, plaintiff maintains that subjecting it to the corporate income tax violates the constitutional requirement of minimum contacts because plaintiff does not derive any benefits or protection from this State. In sum, plaintiff concludes that, statutorily and constitutionally, its contacts with New Jersey do not justify subjectivity to tax under either the CBT or CIT.[1]
To the contrary, defendant alleges that close examination of the corporation’s activities denotes an extensive business presence in the State that goes far beyond mere solicitation of orders. In addition, because the corporation engages some New Jersey manufacturers in the production of advertising displays, defendant claims that the presence of these goods, even if only temporarily held in plaintiff’s name until delivery, is sufficient to conclude that the corporation has a stock of goods or inventory within the State. Moreover, the tools, dies, and molds that Thomson-Leeds buys from its New Jersey suppliers to pass on to its clients creates the presence of property in the State. Thus, defendant concludes that plaintiff meets the subjectivity criteria of the CBT. N.J.S.A. 54:10A-2. Alternatively, the Director contends that the subject corpora *31 tion should be taxed under New Jersey’s CIT because it has a sufficient constitutional nexus and “derives income from sources within the State.” N.J.S.A. 54:10E-2.
To resolve the question of whether plaintiff should be required to file corporate tax returns this court must determine in the first instance whether plaintiff satisfies the statutory criteria of the CBT or the CIT and then, whether plaintiff’s contacts are sufficient to meet the constitutional requisites of due process.
New Jersey imposes a corporate franchise tax measured by net worth[2] and net income on every corporation for (1) the privilege of having or exercising its corporate franchise or, (2) the privilege of doing business or, (3) employing or owning capital or property or (4) the maintenance of an office within the State. N.J.S.A. 54:10A-2. It is well settled that the CBT is constitutionally sound as a fairly apportioned, nondiscriminatory means of exacting from foreign corporations just compensation for the benefits, opportunities and protections afforded by the State. Roadway Express Inc. v. Taxation Div. Dir., 50 N.J. 471, 236 A.2d 577 (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968). Moreover, the scope of the tax “is a broad one ... intended to reach foreign corporations doing an intrastate business, an interstate business, or both, as far as [can] constitutionally be done, and its disjunctive recital of the various privileges must be considered with [this] intended overall coverage in mind.” Id. at 483, 236 A.2d 577.
Thomson-Leeds has never held a certificate of authority to do business in New Jersey. Nevertheless, a foreign corporation can be subject to the CBT even if it has not officially procured a corporate franchise certificate in New Jersey, if the corporation does, in fact, do business, employ or own property or capital or maintain an office in this State. Tamko Asphalt Products, Inc. v. Taxation Div. Dir., 5 N.J.Tax 446, 452 (1983), *32 aff’d o.b. 6 N.J.Tax 342 (App.Div.1984); N.J.A.C. 18:17-1.8(a). It is undisputed that plaintiff has no offices located within New Jersey. Thus, consideration need only be given to two of the statutory criteria of the CBT, namely, whether plaintiff has availed itself of the privilege of doing business, and whether plaintiff owned or employed property or capital within the State during the disputed tax period.
New Jersey defines “doing business” as “all activities which occupy the time or labor of men for profit.” N.J.A.C. 18:7-1.9(a).[3] In N.J.A.C. 18:7-1.9(b) the Director delineates certain factors to be considered in determining whether a foreign corporation is “doing business” in New Jersey, namely,
1. the nature and extent of the activities of the corporation in New Jersey;
2. the location of its offices and other places of business;
3. the continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. the employment in New Jersey of agents, officers, and employees;
5. the location of the actual seat of management or control of the corporation.
There is no one, single controlling factor nor is there a bright line standard that determines whether a foreign corporation’s in-state activities meet the Director’s regulatory requirements for doing business. Rather, it is only by close scrutiny of all the facts of the case, taken as a whole, that a final determination can be made. Ringgold Coal Mining Co. v. Taxation Div. Dir., 4 N.J.Tax 321, 332 (1982). It is uncontradicted that plaintiff has no offices in this State and that the central headquarters and control of the corporation are located in New York City. It is also undisputed that plaintiff does employ the use of sales personnel in New Jersey. Thus, the only remaining factors relevant to this court’s inquiry are the nature and extent, as well as the continuity, frequency and regularity, of the corporation’s business activities in New Jersey to determine *33 if Thomson-Leeds satisfied the “doing business” requirement of the CBT.
Plaintiff argues that because Thomson-Leeds’ business activities constitute a minimal presence in the State, its limited economic exploitation of the New Jersey marketplace does not provide sufficient contacts to meet the “doing business” criteria of the statute. Plaintiff points out that the limited sales volume derived from New Jersey in relation to its nationwide business profits does not rise above the level of mere solicitation of orders.[4] To support its argument, plaintiff compares its business contacts to those of taxpayer in Glick Studios Inc. v. Taxation Div. Dir., 2 N.J.Tax 365 (1981). In that case, a Pennsylvania corporation, engaged in the school photography business in New Jersey, was held subject to the corporation business tax. The court stated that the taking of photographs and the collection of payments within the State established a sufficient business nexus to impose a franchise tax levy on the foreign corporation. Comparing its own economic activities attributable to New Jersey, plaintiff reasons that the absence of similar business contacts in this case precludes a finding of “doing business.”
To the contrary, the determination as to whether plaintiff is “doing business” is based not on the absence of factors *34 found in prior judicial decisions, but rather on the presence of unique contacts that distinguish the instant case and indicate a taxable presence. Avco Financial Services Consumer v. Director, 100 N.J. 27, 40, 494 A.2d 788 (1985). The main focus of the present inquiry, therefore, is not the absence of similar business contacts, but whether there is a “nexus of localized activity ... of a nature and extent ... where it can realistically be said that the state government substantially affords protection and gives benefits to the corporation’s enterprise within the State.” Roadway, supra, 50 N.J. at 483, 236 A.2d 577. Accordingly, it is not only a quantitative but also a qualitative examination of the nature and extent of plaintiff’s business activities that determines if the definitional factors of “doing business” have been met.
Defendant contends that close scrutiny of the business procedures and personalized, ongoing client contacts with New Jersey companies demonstrates that plaintiff has an extensive business presence sufficient to meet the criteria of the CBT. Defendant recounts at length the numerous meetings and presentations of plaintiff in connection with the sale of its advertising displays. It argues that these business contacts go beyond just solicitation and include promoting, marketing, designing, and overseeing production of the advertising displays from inception to final product delivery. After completing a project, subsequent complaints are investigated by the company and continuous client relations are maintained to insure long-term client contacts for possible future orders. Thus, defendant concludes that the collective business activities of plaintiff in New Jersey are sufficiently extensive in scope and frequency to subject plaintiff to the State’s corporation business tax.
The nature and extent of plaintiff’s business activities are best demonstrated by its own evidence. The summary of one sales representative’s contacts with New Jersey clients indicated that during the 20 months of the questioned tax period, a total of 17 meetings were held with one client: 12 in *35 New Jersey, and five in New York City. During the same period, a second client account required a total of 17 meetings; nine in New Jersey and eight in New York City. Plaintiff’s instate activities included the initial contact, delivery of prototypes and sketches, meetings to discuss changes, and presentations of newly-created designs. Both instances illustrate the patterns of continuous contacts necessitated by the nature of plaintiff’s business.
Defendant emphasizes the similarities between the taxpayers in Clairol v. Kingsley, supra, and Tamko Asphalt Products, Inc. v. Taxation Div. Dir., supra, and the present plaintiff. In Clairol, the main activity of the taxpayer was the solicitation of orders. This primary activity was conducted along with other peripheral activities, including, among other things, assisting clients with displaying products, taking inventory, and distributing promotional materials. Taxpayer also provided technical assistance to stores using their products. Clairol owned no property in the State except the samples and sales materials carried by the salesmen in their cars which were leased and located in New Jersey. The court held it was evident that plaintiff’s business activities satisfied the statutory criteria of the CBT and the tax levied was not subject to any constitutional infirmity.
Plaintiff-taxpayer in Clairol also argued that it was immune from taxation under the Interstate Income Act, 15 U.S.C.A. § 381, supra. In light of plaintiff’s claim that its activities did not exceed mere “solicitation of orders” the court was required to consider the effect of 15 U.S.C.A. § 381. It concluded that since plaintiff’s activities were not limited to the bare solicitation of orders, the tax levied on Clairol was not prohibited.
Similarly, in Tamko, taxpayer was held subject to the CBT on the basis of solicitation of orders and other activities which included servicing customer complaints and promoting Tamko products. One sales representative lived in New Jersey and used a car owned and registered in the State. The court concluded that these activities constituted “doing business” in *36 New Jersey and therefore the taxpayer was within the reach of the CBT.
Plaintiff refutes defendant’s reliance on Clairol and Tamko stating that the differences between those cases and the instant case are extensive and important. In Clairol, taxpayer employed New Jersey residents, leased cars in New Jersey, and carried on extensive business activities including taking inventory and sending technical assistance to its customers. In Tamko, one of the sales representatives resided in New Jersey and owned a car registered in the State.
Plaintiff’s argument that the factual considerations of Clairol and Tamko are inapplicable to this case is without substance. The specific dissimilarities or absence of similar characteristics in plaintiff’s case is not germane. Whether a taxpayer meets the Director’s guidelines for “doing business” requires a factual analysis of each individual case. As stated previously, it is the consideration of the presence, not absence, of factors taken collectively that is dispositive of a “doing business” determination.
Plaintiff also cites the language of our Supreme Court in Avco Financial, supra, to support its assertion that it does not meet the subjectivity criteria of the CBT. In Avco Financial the taxpayer in a CIT context emphasized that it was not subject to the CIT because it did not (1) maintain an office in New Jersey, nor (2) own or lease property or (3) have resident representatives in this State. The Court responded by stating that if any of those factors had been present then the taxpayer would have been subject to the CBT. Id., 100 N.J. at 39, 494 A. 2d 788. From this plaintiff argues that because it does not meet any of these three qualifications it is exempt from the CBT.
Plaintiff misconstrues the language of our Supreme Court in Avco Financial. The Court was not attempting to establish minimum statutory guidelines for the imposition of the CBT. The Court merely enumerated certain factors, which, if found, would definitely subject a foreign corporation to the CBT. *37 This is not to say, however, that the three factors mentioned are the sole criteria for subjectivity to the CBT. Such a conclusion would disregard explicit statutory language regarding other bases for franchise taxation and eliminate other definitional considerations in the Director’s regulations.
Plaintiff also emphasizes the fact that its sales representatives are not New Jersey residents. “This is a distinction without a difference.” Tuition Plan of New Hampshire v. Taxation Div. Dir., 4 N.J.Tax 470, 480 (1982). It is not whether the representatives are residents of this State that is of significance. Rather it is the performance of physical business services in relation to plaintiff’s operations in this State particularly in relation to the establishment and maintenance of sales that is of great moment. In any event, in order to do business in New Jersey there is no requirement, legal or economic, that the sales representatives be residents of New Jersey.
In addition to plaintiff’s three sales representatives who perform business activities in this State, plaintiff concedes that it has retained New Jersey suppliers and manufacturers to produce and assemble its advertising displays. During the disputed tax years, plaintiff utilized the services of seven components manufacturers and one “finisher” in New Jersey.
Thomson-Leeds stipulated that, in its capacity as overseer to insure that all contract requirements were executed according to client specifications, it was necessary to make occasional visits to manufacturing plants to supervise production and to iron out periodic difficulties. Thomson-Leeds paid its suppliers directly. Subsequently, if complaints arose after product delivery, plaintiff would inspect the displays and, in some cases, instruct the subcontractor to remedy the complaint. Furthermore, plaintiff was transacting a substantial enough business with New Jersey companies to apply for authority to issue resale certificates to allow its New Jersey subcontractors an exception from the collection of sales tax. These contractual relations between plaintiff and New Jersey manufacturers evi *38 dence a persistent and extensive business presence in the State. Although plaintiff may not exhibit precisely the same determinative factors as found in Clairol or Tamko, nevertheless, the “nature and extent of [plaintiffs business] activities” are sufficiently substantial to lend support to the conclusion that plaintiff was “doing business” as expressed in the Director’s regulation.
An additional inquiry relevant to the Director’s definitional factors for “doing business” concerns the continuity, frequency, and regularity of the corporation’s business activities within the State. Plaintiff contends that its business contacts with New Jersey were random, sporadic, and irregular. In this case, however, the facts belie plaintiff’s argument. Repeated contacts with New Jersey clients and prospective customers, ongoing contractual relations with New Jersey manufacturers, continuous visits to the State for followup meetings, presentations, delivery of sketches, servicing complaints, overseeing production of displays attest to a vigorous, persistent, and continuous effort by plaintiff to promote and maintain business ties within this State. For the privilege of maintaining continuous, frequent, and regular business contacts with New Jersey clients and companies, the State is justified in imposing a fairly apportioned tax. Thus, in light of all the foregoing facts, I conclude that plaintiff’s activities constitute “doing business” in this State.
Defendant maintains that even if plaintiff is not “doing business” in New Jersey, it is subject to a second basis of taxation under the CBT because it “employs or owns capital or property” within the State. N.J.A.C. 18:7-1.8; N.J.S.A. 54:10A-2. Having concluded that plaintiff was doing business in this State renders it unnecessary to consider whether plaintiff also employed or owned property in this State. In this regard, however, it is noteworthy that plaintiff concedes ownership of property in this State and seeks to avoid the existence of that fact by arguing that “plaintiff’s ownership is a brief temporary state, between the time a product is completed and *39 the time it is shipped out.” Needless to say, the length of time that plaintiff owns property in New Jersey is of little consequence in the context of the statutory criterion.
The CIT is levied only in lieu of a tax levy under the CBT. N.J.S.A. 54:10E-3a. Since I have concluded that plaintiff was doing business in this State within the meaning of the statutory and regulatory criteria, is subject to the CBT and, therefore, must file a corporate business tax return there is no need to discuss whether plaintiff is subject to a tax levied under the CIT.
This does not, however, conclude the inquiry. There is an umbrella of constitutional protection which circumscribes any attempt to impose state taxes on a foreign corporation. Although plaintiff may satisfy the statutory and administrative criteria for subjectivity to the CBT, constitutional permissibility revolves on whether there is “some minimum connection, some definite link,” Miller Brothers Co. v. Maryland, 347 U.S. 340, 344-345, 74 S.Ct. 535, 539, 98 L.Ed. 744, 748 (1954), reh’g den. 347 U.S. 964, 74 S.Ct. 708, 98 L.Ed. 1106 (1954), between the instate activities of the corporation and the taxing forum. Due process requires minimum contacts and a rational relationship between the taxpayer and the taxing state. Mobil Oil Corp. v. Comm’r of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); Moorman Mfg. Co. v. Bair, 437 U.S. 267, 272-273, 98 S.Ct. 2340, 2343-2344, 57 L.Ed.2d 197, 204, reh’g den. 439 U.S. 885, 99 S.Ct. 233, 58 L.Ed.2d 201 (1978). In applying these principles, the “simple but controlling question is whether the State has given anything for which it can ask a return.” Wisconsin v. J.C. Penney Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267, 270 (1940). The State must demonstrate that it has provided some benefit, opportunity, or protection for the foreign corporation to justify the attribution of taxable value to the State.
Plaintiff argues that its business presence in New Jersey is too tenuous to constitutionally justify the imposition of any state tax. It is engaged exclusively in interstate business *40 and its limited penetration of the New Jersey marketplace does not provide sufficient contacts to meet the constitutional prerequisites for state taxation. Because, plaintiff maintains, the corporation does not avail itself of any benefits or protections from the State, New Jersey has thus given nothing for which it can ask a return. On the other hand, defendant points to the nature and extent of plaintiffs in-state business activities and the continuous promotion of the company’s services by three sales representatives as ample evidence that there are sufficient minimum contacts for constitutional permissibility.
Plaintiff characterizes its business activities in the State as minimal, sporadic, and irregular, and emphasizes that the extent of its business solicitation by sales representatives merely establishes a casual physical presence that does not rise to the constitutionally required level of minimum contacts.[5] To date the United States Supreme Court has not recognized solely economic exploitation of a state’s marketplace as sufficient constitutional grounds for imposition of a state tax. In National Bellas Hess v. Dep’t of Rev., 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), the Court struck down the imposition of an Illinois use tax as violative of the Due Process and Commerce Clauses because taxpayer, a Missouri mail-order business, contacted customers and delivered its products in Illinois solely by mail or common carrier. Despite large-scale, systematic, and continuous exploitation of the Illinois market, the majority held that there was an insufficient connection between taxpayer’s activities and Illinois to enforce the collection of the use tax.
On the other hand, in Scripto Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), ten independent jobbers “conducting continuous local solicitation within the taxing state” *41 established a sufficient constitutional nexus to enforce the collection of Florida’s use tax on a Georgia corporation. Id., 362 U.S. at 211, 80 S.Ct. at 621, 4 L.Ed.2d at 664. The salesmen worked only part-time promoting the corporation’s products, and none of the salesmen were employees of the foreign corporation. Nevertheless, the Court distinguished pri- or cases noting that solicitation coupled with other regular systematic activities provided a decisive factor in upholding the collection of the use tax under due process principles.
Similarly, in Standard Pressed Steel v. Washington Dep’t of Rev., 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975) the Court upheld the constitutionality of a state business and occupation tax. The presence of one full-time employee in the state, systematically and regularly promoting the foreign corporation’s business activities, made possible “the realization and continuance of valuable contractual relations.” Id., 419 U.S. at 562, 95 S.Ct. at 708, 42 L.Ed.2d at 722. The Court thus concluded that the minimum contacts requirement of due process was satisfied.
These cases demonstrate that the United States Supreme Court requires something more than economic presence or the taking advantage of a state’s economic environment in order to permit a state to exercise its taxing power in a due process context. As was indicated in Chemical Realty Corp. v. Taxation Div. Dir., 5 N.J.Tax 581, 612 (1983), aff’d o.b. per curiam 6 N.J.Tax 448 (App.Div.1984), “[i]t appears that, in addition, there must be a degree of physical presence.”
That requirement is satisfied in this case. Plaintiff has entered this State through its three sales representatives looking for and obtaining business in New Jersey. Plaintiff directly engages in physical activities in this State in furtherance of its business purposes. Although acceptance of sales orders takes place in New York, the main aspects of plaintiff’s transactions are in New Jersey. Were it not for the efforts of plaintiff’s representatives in New Jersey, plaintiff, in all probability, would not conduct any business in this State. It is the physical *42 activities of plaintiff’s representatives in this State that create and further the acquisition of business income that provides the physical nexus to render the income generated by their activity taxable under proper allocation procedures. When a taxpayer’s representatives operate within this State and make possible the realization and continuation of valuable contractual relationships between the taxpayer and its in-state customers, this State has indeed given something for which the Due Process Clause permits New Jersey to ask return. Standard Pressed Steel v. Washington, supra, 419 U.S. at 562, 95 S.Ct. at 708. It is perfectly clear that New Jersey provides an advantageous economic environment which plaintiff exploits through its own representatives and a number of New Jersey manufacturers and fabricators. Additionally, this State protects plaintiff’s sales representatives and provides conditions under which income-producing relationships can be established and nurtured.
Although the level of contacts required to pass constitutional scrutiny is not capable of precise definition, it is evident that plaintiff’s activities in New Jersey adequately establish a relationship between plaintiff and this State that render the requirement of filing a corporate business tax return constitutional.
Due process also requires a “rational relationship between the income attributed to the State and the intra-state values of the enterprise.” Mobil Oil Corp. v. Commissioner, supra, 445 U.S. at 436-437, 100 S.Ct. at 1231-1232, 63 L.Ed.2d at 520. The United States Supreme Court has stated on several occasions that satisfaction of the nexus requirement leads inevitably to the conclusion that such a rational relationship exists. Standard Pressed Steel Co. v. Washington, supra; Roadway Express, Inc. v. Taxation Div. Dir., supra, 50 N.J. at 483, 236 A.2d 577.
Moreover, because New Jersey utilizes an allocation formula that is fairly apportioned it is likely that the ultimate tax imposed on plaintiff would meet the rational relationship test. See Avco Financial, supra, 100 N.J. at 41-42, 494 A.2d 788. *43 Since as yet, however, no tax has been assessed against plaintiff, there is no need to consider this second constitutional issue. In light of plaintiff’s sufficient business contacts with this State, I conclude that the necessary minimum requirements of due process are satisfied.
The necessary statutory and constitutional requisites having been met, plaintiff is required to file a corporate business tax return. The Clerk of the Tax Court is directed to enter judgment affirming the Director’s determination.

 It should be noted that plaintiff has not challenged the general validity of either the CBT or CIT nor has plaintiff contested the action of defendant on the basis that it would subject plaintiff to multiple taxation or the possibility of multiple taxation in violation of the Commerce Clause.

 Subsequent to the taxable period in question the Legislature enacted a phased-out repeal of the "net worth” provisions. See L. 1982, c. 55.

 Plaintiff does not question the validity of the definitional regulation N.J.A.C. 18:7-1.9, thus, the issue is whether plaintiff is doing business in this State within the meaning of the foregoing regulation.

 Although plaintiff speaks in terms of its activities in New Jersey as not exceeding bare or mere "solicitation of orders” it has not invoked the provisions of the Interstate Income Act, Pub.L. No. 86-272, 73 Stat. 555, 15 U.S.C.A. § 381 et seq. (1970) which provides immunity from state taxation if taxpayer’s sole activity within the State is solicitation of orders, apparently because the law requires that the orders be "sent outside the State for approval and if approved, [be] filled by shipment or delivered from a point outside the State____” Id. at § 381(a)(1). In this case, some of plaintiffs orders are shipped from points inside New Jersey to New Jersey clients.
It is also noteworthy that unlike some other jurisdictions, New Jersey follows a narrow interpretation of the federal law. Thus, any business activity “beyond the specific act of asking a customer to purchase one's product ... transcends the bounds of mere solicitation.” Ringgold Coal Mining Co. v. Taxation Div. Dir., supra, 4 N.J.Tax at 333; see also Clairol v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.1970), aff'd 57 N.J. 199, 270 A.2d 702 (1970), app.dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971).

 In this regard plaintiff relies extensively upon the fact that its percentage of sale receipts attributable to New Jersey as compared to plaintiffs total sales receipts nationwide is only .9%. As defendant correctly responds, the focus is not on the amount of plaintiffs New Jersey business as compared to its business nationwide but rather on whether its New Jersey business activity in itself meets the statutory and constitutional criteria.