LASSER, P.J.T.C.
This ease involves the contest of an estimated corporation business tax assessment of $10,000 a year for tax years 1979 through 1981 imposed by the Division of Taxation against Mark Andy, Inc., a Missouri corporation, and a Division directive to file corporation business tax returns for the years 1979 through 1985 pursuant to the New Jersey Corporation Business Tax Act (N.J.S.A. 54:10A-1 et seq.). Mark Andy contends that its business activities do not meet the statutory criteria for imposition of the tax and that imposition of the tax is violative of the Commerce and Due Process Clauses of the United States Constitution and the Interstate Income Act (Pub.L. 86-272, 73 Stat. 555, 15 U.S.C.A. §§ 381-384). This case is before the court on cross-motions for summary judgment.
The facts were stipulated. The pertinent facts relating to the activities of Mark Andy for the period October 1, 1978 through September 30, 1985 follow. Mark Andy is a Missouri corporation engaged in the design, manufacture and sale of printing presses and converting systems. These products are marketed nationally and internationally with Mark Andy providing installation, repair services and replacement parts for its products.
To market its products in New Jersey and several other states, Mark Andy employed a regional sales representative who acted as a liaison between the Missouri office and customers throughout the region and who, from May 1979 through September 1981, was a resident of New Jersey.[1] This resident *597 sales representative maintained a work area in his home with Mark Andy paying for separate telephone service under a Mark Andy listing. Mark Andy provided him with office equipment costing $643.40 and a car that was leased in New Jersey for his use throughout his region. In 1980 and 1981, respectively, this sales representative spent 51% and 55% of his work time in New Jersey.[2]
The Missouri office provided the resident sales representative with lists of customers and prospective customers to contact. The sales representative provided price quotations to prospective purchasers of presses and related equipment and corresponded, and traveled to meet, with customers and prospective customers who expressed interest in Mark Andy products. All written correspondence with customers was prepared and mailed by the Missouri office. He had no authority to accept orders for the corporation. Either the customer or the sales representative would forward an order to the Missouri headquarters for acceptance. The sales representative received commission on all sales to New Jersey customers. Infrequently, Mark Andy had its sales representative follow up on delinquent payment problems in New Jersey by visiting or communicating with customers.
From May 1979 to September 1981 Mark Andy sold 15 presses in New Jersey. New Jersey sales revenue for fiscal years 1979 through 1981 was summarized as follows:
*598 New Jersey Sales[3] 1979 1980 1981
Presses $ 439,409 259,650 $ 436,044
Parts 85,918 70,078 87,461
Services 9,334 7,843 7,194
Total $ 534,661 337,571 $ 530,699
Total Revenue $7,678,205 1,619,237 $11,499,814
Percentage of total revenue from New Jersey sales 6.96% 3.5% 4.6%
Mark Andy provided on-site installation, training, warranty, repair and preventive maintenance services to New Jersey customers in their New Jersey plants. Installation of a press in a New Jersey customer’s plant would normally require a Mark Andy technician to work in the plant for three or four days. The unassembled complex press would be shipped to New Jersey, and the Mark Andy technician would assemble and level the press, connect the wiring, test it to be sure it was operational and then spend 16 to 20 hours training the New Jersey customer’s employees to operate the press.
Mark Andy’s technical advisers handled customer inquiries relating to maintenance and repair of the purchased presses, and to the incorporation of Mark Andy products into customers’ existing production systems. When these inquiries could not be answered over the telephone, a Mark Andy service technician would visit the customers’ plants. New Jersey customers were charged for some of these service calls.
In 1979, Mark Andy instituted a “Preventive Maintenance Program” to encourage sales, particularly sales of replacement parts and related equipment. Under this program the customer is charged for maintenance visits. A service technician makes two inspection visits to a customer’s plant at six-month intervals and spends 8 to 12 working hours checking, adjusting to *599 tolerance, and lubricating machine components and systems. At the conclusion of the visit, the customer is supplied with a report on the condition of the machine and advised of potential problems and parts that might need to be replaced. Mark Andy technicians made 68 preventive maintenance visits to New Jersey customers from 1979 to 1985.
The technical service visits (including preventive maintenance visits) and the charges to New Jersey customers for these visits were summarized as follows:
Calendar Year Technical service employee visits to New Jersey Estimated number of days worked in New Jersey by service technicians Technical service charges to New Jersey customers
1979 20 29 $ 6,707
1980 21 25 4,308
1981 43 43 7,972
1982 27 33 12,027
1983 45 46.5 10.071
1984 31 26.5 10.071
1985 29 32 6,448
Total 216 235 $51,727 [4]
Technical service revenues from all states during the tax years in question were .7% to 1.4% of total revenues.
From February 23, 1981 through February 1982, Mark Andy employed a technical service representative who was a New Jersey resident. Mark Andy supplied this employee with a car that was leased in New Jersey, and issued him tools for use in his service region. For the one year of his employment this service technician made 132 service visits throughout his region, of which 39 (30%) were to New Jersey customers. Service *600 technicians also made courtesy visits to New Jersey locations to maintain customer contact and offer repair services.
Mark Andy maintains no offices or warehouses in New Jersey other than the resident sales representative’s work area and owns no property in this State other than the sales representative’s office furniture and the technical service representative’s tools. Mark Andy has no billboards or signs in New Jersey and maintains no mailing address, bank accounts or records in the State. Mark Andy receives no rental payments, retains no collection services, does not resort to courts or administrative agencies, makes no financing statement or mortgage filing and purchases no goods in New Jersey. Mark Andy employs no other officer, agent or representative in New Jersey. Mark Andy pays no unemployment insurance taxes or any other taxes to the State of New Jersey or any political subdivision thereof, except New Jersey gross income tax deducted from resident employees’ compensation for the years 1980 and 1981 and remitted by Mark Andy to the State of New Jersey. Mark Andy has no certificate of authority to do business in New Jersey.
The Director of the Division of Taxation has determined that Mark Andy is subject to the corporation business tax. Plaintiff contends that it is not subject to taxation by New Jersey because (1) its activities do not meet the statutory criteria for imposition of the tax, (2) imposition of the tax constitutes a violation of the Commerce Clause and a denial of due process under the Fourteenth Amendment of the United States Constitution and (3) imposition of the tax violates the Interstate Income Act.
I.

Doing Business.

The Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1 et seq., requires a corporation to pay an annual franchise tax, for (1) the privilege of having or exercising its corporate franchise in this State, or (2) the privilege of doing business, or (3) *601 employing or owning capital or property or (4) maintaining an office in this State. N.J.S.A. 54:10A-2. Returns are required to be filed by every corporation subject to the tax. N.J.AC. 18:7-11.1. The Director contends that Mark Andy is doing business in the State of New Jersey.
The Division of Taxation’s regulations define “doing business” as “all activities which occupy the time or labor of men for profit.” N.J.A.C. 18:7-1.9(a). The Director has identified the following factors to be considered when determining whether a foreign corporation is doing business in New Jersey:
1. the nature and extent of the activities of the corporation in New Jersey;
2. the location of its offices and other places of business;
3. the continuity, frequency and regularity of the activities of the corporation in New Jersey;
4. the employment in New Jersey of agents, officers and employees and
5. the location of the actual seat of management or control of the corporation. [N.J.A.C. 18:7-1.9(b)]
Mark Andy has challenged the application but not the validity of these regulations. These regulations are accorded a presumption of reasonableness and validity, Bergen Pines County Hosp. v. N.J. Dept. of Human Services, 96 N.J. 456, 476 A.2d 784 (1984), and when duly promulgated under properly delegated powers have the force and effect of law. State v. Atlantic City Electric Co., 23 N.J. 259, 128 A.2d 861 (1957).
The courts in New Jersey have held that foreign corporations which sell products and engage in systematic solicitation of customers in New Jersey, maintain close contact with New Jersey customers through sales representatives who visit New Jersey customers at their locations and offer technical assistance in connection with products sold are “doing business” in New Jersey. Clairol v. Kingsley, 109 N.J. Super. 22, 262 A.2d 213 (App.Div.1970), aff’d 57 N.J. 199, 270 A.2d 702 (1970), app. dism. 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971); Tamko Asphalt Products, Inc. v. Taxation Div. Director, 5 N.J. Tax 446 (Tax Ct.1983), aff’d 6 N.J. Tax 342 (App.Div.1984); Thomson-Leeds Co., Inc. v. Taxation Div. Director, 8 N.J. Tax 24 (Tax Ct.1985).
*602 In Clairol, plaintiff, a foreign corporation, solicited orders for its products in New Jersey. Salespeople visited retail outlets to promote the products and instruct retailers on the use of the products. These salespeople would also advise retailers on the display of products and inventory control and deal with customer complaints. Clairol owned no property in New Jersey except sample cases provided to salespersons and cars leased for use by the salespersons. The court held that this level of activity constituted “doing business” and subjected Clairol to the corporation business tax.
In Tamko, plaintiff, a Maryland corporation engaged in the manufacture and sale of asphalt roofing materials, employed two regional salesmen to solicit orders from New Jersey customers, pron.ote Tamko products and handle customer complaints. On occasion they would advise customers on the care of Tamko products. One of the salesmen spent 60% of his time in New Jersey; the other spent 30%-35% of his time in New Jersey. , The court held that these activities in New Jersey satisfied the “doing business” criteria of the CBT.
Most recently in Thomson-Leeds, the Tax Court held that a foreign corporation was subject to the CBT based on the level of customer contacts taking place in New Jersey. The in-state activities of Thomson-Leeds included initial contacts, delivery of products, meetings to discuss changes and presentation of new products. The court stated:
For the privilege of maintaining continuous, frequent, and regular business contacts with New Jersey clients and companies, the State is justified in imposing a fairly apportioned tax. [Thomson-Leeds, supra, 8 N.J., Tax at 38]
Comparing Mark Andy’s activities with those of the foreign corporations in the above cases, it is apparent that Mark Andy was “doing business” in New Jersey from 1979 through 1985, the years in question. Mark Andy actively solicited customers through its sales representative and through its preventive maintenance program. The preventive maintenance program was specifically designed to establish a continuous relationship with customers in order to promote the sale of replacement parts. The technical services and advice *603 provided by Mark Andy indicate regular, continuous contact with its customers during the subject tax years. Mark Andy employees advised customers on the use and care of the product, similar to the advice provided in Tamko and Clairol. In particular, the advice on incorporation of Mark Andy equipment into customers’ production systems is not unlike Clairol representatives advising retailers how to display Clairol products in context with its other merchandise.
Mark Andy contends that its contacts with New Jersey customers were sporadic and incidental. The facts show, however, that over 50% of its sales representative’s work time was spent in New Jersey during 1980 and 1981. Installation services and employee training were provided in conjunction with most sales. Finally, Mark Andy sought to establish a regular pattern of customer contact through its preventive maintenance program.
Mark Andy emphasizes that it maintains no office in New Jersey, owns no property in New Jersey, has no billboards, no mailing address, no bank accounts and no certificate of authority to do business in New Jersey. The determination as to whether a foreign corporation is “doing business” in New Jersey rests on the presence, not the absence, of activities within the state. Thomson-Leeds, supra, 8 N.J. Tax at 33-34. It is not necessary for a corporation to maintain an office or own property in New Jersey to be subject to the CBT. See Tamko and Thomson-Leeds, supra.
Plaintiff next argues that it should not be subject to the CBT because the amount of sales revenue and service revenue generated in New Jersey is only a small percentage of Mark Andy’s total gross revenues. The courts have considered gross sales revenues of foreign corporations in their determinations. In Tamko, New Jersey sales amounted to 19% of the corporation’s total sales. In Clairol, plaintiff’s New Jersey sales were over $3 million a year. In Thomson-Leeds, of a total of 332 orders with a gross volume of $25,563,354, New Jersey orders *604 totaled only 13 and produced gross receipts of $211,855, approximately .9% of plaintiff’s gross volume.
No one factor is dispositive of the question of whether a corporation is doing business in New Jersey. The courts must closely scrutinize all the facts in a case before a final determination can be made. Ringgold Coal Mining Co. v. Taxation Div. Dir., 4 N.J. Tax 321 (Tax Ct.1982).
Accordingly, in Thomson-Leeds, supra, the court stated:
[I]t is not only a quantitative but also a qualitative examination of the nature and extent of plaintiffs business activities that determines if the definitional factors of doing business have been met. [8 N.J. Tax at 34]
The cases illustrate that it is the extent of ongoing activity of foreign corporations in New Jersey and the nature of their presence in New Jersey which determine whether they are subject to the CBT. Mark Andy’s percentage of sales in New Jersey averaged 5% during the years 1979-1981. More important, however, are Mark Andy’s solicitation efforts, its installation and repair services and its efforts to develop strong, continuous client contacts through the preventive maintenance program. These demonstrate that Mark Andy has developed a presence in New Jersey beyond one measured in dollars and cents. Mark Andy has created a nexus of localized activity in this State of sufficient nature and extent to realistically conclude that the government of the State of New Jersey substantially affords it protection and gives benefits to its enterprise within the State. Roadway Express Inc. v. Taxation Div. Dir, 50 N.J. 471, 236 A.2d 577 (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968). Furthermore, the extent of gross sales in New Jersey, or lack thereof, is a factor in determining how much tax the corporation will be required to pay. See Silent Hoist & Crane Co. v. Taxation Div. Dir., 100 N.J. 1, 494 A.2d 775 (1985), cert. den. — U.S. -, 106 S.Ct. 409, 88 L.Ed.2d 359 (1985).
One last point the court must address is the significance to be given the fact that Mark Andy’s sales representative for New Jersey was not a resident of New Jersey after 1981. The *605 court is directed to study all the facts in the case, Ringgold, supra, and the residence of the sales representative is a factor to be taken into consideration. The extent of activities and degree of physical presence determine whether a corporation is doing business in New Jersey. Mark Andy’s sales, repair services and preventive maintenance program continued from 1981-1985, and there was no proof presented that the activities during the period when a non-resident sales person represented the company were different from or less than those during the time when Mark Andy had a resident sales representative. If the New Jersey activities are sufficient, the presence or absence of a resident sales representative is not controlling. See Thomson-Leeds, supra.
II.

Minimal Contacts.

A state may constitutionally tax a foreign corporation engaged in interstate commerce provided that there is a “minimal connection” or “nexus” between the interstate activities of the corporation and the taxing state and a rational relationship between the income attributed to the state and the in-state values of the enterprise. Container Corporation of America v. Franchise Tax Board, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed. 2d 545 (1983); Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); Silent Hoist, supra.
Mark Andy argues that its contacts with New Jersey do not establish a minimal nexus with the State. Minimal nexus is found when there is some definite link between the State and the entity being taxed. National Geographic Soc. v. California Bd. of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed. 2d 631 (1977). Factors which establish minimal nexus are physical presence of the entity in the taxing state, National Geographic, supra; Chemical Realty Corp. v. Taxation Div. Director, 5 N.J. Tax 581, 612 (Tax Ct.1983), aff’d o.b. per curiam 6 N.J. Tax 448 (App.Div.1984), and the manner in which the taxpayer has entered the State to work the market. Avco *606 Financial Service Consumer v. Director, 100 N.J. 27, 38, 494 A.2d 788 (1985).
In Standard Pressed Steel v. Washington Dep’t. of Rev., 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975), the Supreme Court based its finding of minimal nexus on the presence in the state of one full-time employee systematically and regularly promoting the foreign corporation’s business activities, making possible continuing contractual relations.
In Scripto Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), the decisive factor providing nexus was the systematic solicitation of business within the taxing state by salesmen.
Mark Andy maintains a physical presence in New Jersey through its solicitation efforts by salesmen within the State and by its preventive maintenance program providing continuous and systematic contact with customers at their New Jersey locations. Mark Andy also provides repair and technical assistance at customers’ plants. This degree of contact has consistently been held to meet the minimal nexus test. Avco, Tamko and Thomson-Leeds, all supra.
III.

Federal Interstate Income Act.

Plaintiff contends that if it is found to be doing business in New Jersey, the Interstate Income Act prevents imposition of the CBT. The Interstate Income Act, 15 U.S.C.A. §§ 381-384, provides that no state shall impose a tax if a taxpayer's only business activity within that state is the solicitation of orders which are sent out of the state for approval or rejection, and if approved, are filled by shipment or delivery from a point outside the state. 15 U.S.C.A. § 381(a)(2). Congress enacted this law for the purpose of establishing a minimum level of activity below which a net income tax could not be imposed. Ringgold, supra, 4 N.J. Tax at 328. The issue thus is whether Mark Andy’s activities in New Jersey go beyond the solicitation of orders.
In Ringgold, supra, the court stated:
*607 [A]ny activity beyond the specific act of asking a customer to purchase one’s product ... transcends the bounds of mere solicitation. [4 N.J. Tax at 333.]
The court in Ringgold found that a coal mining company which leased an automobile in New Jersey, provided office equipment for a salesman in New Jersey, authorized New Jersey salesmen to follow up on delinquent payments and handle customer complaints in New Jersey exceeded the limitation set forth in the statute. In Tamko, the court found that the corporation’s activities, promoting products and handling customer complaints, also, exceeded mere solicitation.
Mark Andy’s activities exceeded mere solicitation. Its salesmen and technicians received supplies and leased cars with which to operate in New Jersey. On occasion, sales representatives followed up on delinquent payments. Mark Andy’s representatives offered technical advice. Plaintiff argues that all of its activities were incidental to its solicitation and sales. The activities were not incidental. The preventive maintenance program demonstrates an intention to develop continuing customer ties to stimulate sales and maintain a long lasting relationship by visiting the locations of New Jersey customers. Mark Andy made repair visits for which it charged its customers a separate fee. Such repair visits were separate transactions in addition, not incidental, to sales. The preventive maintenance program, numerous visits to New Jersey locations, the provision of advice and the remedying of technical difficulties go beyond mere solicitation.
IV.

Conclusion.

I find that Mark Andy is doing business in the State of New Jersey and is subject to the CBT, and that its activities within the State exceed those protected by the Interstate Income Act. It is within the discretion of the Director to make an estimated assessment for the years 1979 through 1981, N.J.A. C. 18:7-14.-3, and to direct Mark Andy to file corporation business tax *608 returns for the years 1979 through 1985, pursuant to N.J.A.C. 18:7-11.1. Accordingly, the Director’s motion for summary judgment is granted, and Mark Andy’s motion for summary judgment is denied.
The Clerk of the Tax Court is directed to enter judgment affirming the Director’s estimated corporation business tax assessments for 1979 through 1981 and his direction to taxpayer to file corporation business tax returns for tax years 1979 through 1985, and providing that if the taxpayer files corporation business tax returns with the Director within the time period provided in the judgment, these assessments will be revised by the Director based upon the filed returns. The Tax Court does not retain jurisdiction. Any dispute the taxpayer may have as to these revised assessments will be reviewed through normal dispute procedures within the Division of Taxation, and if such procedures do not resolve matters to taxpayer’s satisfaction, the taxpayer may appeal such assessments to this court by filing a new complaint as provided by this court's rules and procedures.
If the taxpayer files an appeal from this judgment, the time within which the taxpayer must file its corporation business tax returns will be tolled pending final determination by the Appellate Division of the Superior Court, or higher court, of any and all matters in dispute.

 The sales representative’s region included Connecticut, Delaware, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, Pennsylvania, Rhode Island, Vermont, Washington, D.C. and Puerto Rico, as well as the Canadian Provinces of Manitoba, Newfoundland, Nova Scotia, Ontario and Quebec.

 The stipulation of facts is silent as to the percentage of work time spent in New Jersey by the resident sales representative in 1979. This sales representative was replaced in 1981 by a Pennsylvania resident. The stipulation of facts does not state whether the duties of the sales representative changed in and after 1981 or what percentage of time this later representative spent in New Jersey.

 The stipulation of facts does not provide New Jersey sales figures for the years 1982-1985, only the fact that Mark Andy did sell and install presses during that time. It appears that technical service charges to customers were not included in the sales figures.

 The stipulated figures actually total $57,604, but it appears that there has been a typographical error in the 1983, 1984 or the total figure.