109 N.J. Super. 22 (1970)
262 A.2d 213
CLAIROL, INCORPORATED, A DELAWARE CORPORATION, PETITIONER-APPELLANT,
v.
WILLIAM KINGSLEY, ACTING DIRECTOR OF DIVISION OF TAX APPEALS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1969.
Decided February 16, 1970.
*23 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Roger C. Ward argued the cause for appellant (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Charles H. Landesman, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney; Mr. Stephen Skillman, Deputy Attorney General, of counsel).
*24 The opinion of the court was delivered by KOLOVSKY, J.A.D.
Clairol, Incorporated, is a Delaware corporation which has not qualified to do business in New Jersey. It appealed to the Division of Tax Appeals from the denial by the Director of the Division of Taxation of Clairol's claims for refund of the following taxes (besides interest) paid under protest for the years 1959 to 1963 inclusive:

1959 ............................................... $ 1244.24
1960 ............................................... 1600.08
1961 ............................................... 1673.55
1962 ............................................... 2150.75
1963 ............................................... 2811.49

The denial was bottomed on a determination by the Director that the "nature, extent and scope" of Clairol's activities in New Jersey were sufficient to "create a taxable status pursuant to the New Jersey Corporation Business Tax Act (N.J.S.A. 54:10A-1 et seq.)."
At the hearing before the Division, held in the latter part of 1967, Clairol sought to challenge not only the taxes for the years 1959 through 1963 but also those for the years 1964 to 1966, inclusive. The Director ruled that it had no jurisdiction to deal with the latter three years since Clairol had not filed a petition of appeal with respect to those years.
The Division affirmed the Director's determination with respect to the earlier five years, its opinion embodying findings of fact and conclusions of law on the basis of which it upheld the propriety of the tax levies. The appeal to this court followed.
Clairol did not in the Division, and does not here, challenge the amounts of the taxes it has been required to pay nor the fairness of the statutory allocation formulae used in computing them. Rather, it argues that its activities in New Jersey are such that levy of a corporation business tax on it is not authorized by the New Jersey statute and indeed is prohibited both by the Federal Constitution and by a federal statute. In addition, it argues that the Division *25 erred in refusing to consider its challenge of the taxes for the years 1964 through 1966, contending that "the tax years 1964 through 1966, in addition to the tax years 1959 through 1963 [were] properly before the Division and are ripe for decision in these proceedings."
There is no substance in the latter contention. The Division lacked jurisdiction to review the decisions of the Director of Taxation with respect to the years 1964 through 1966 because Clairol had not filed petitions of appeal from such decisions, a statutory prerequisite to the acquisition of jurisdiction by the Division. See N.J.S.A. 54:10A-19.2; Newark v. Fischer, 3 N.J. 488, 493 (1950). The three months limited by the cited statute for taking such an appeal had long since expired as far as the Director's rulings with respect to the years 1964 and 1965 were concerned. As for the year 1966, the time for appeal had not yet begun to run, the Director not having made a ruling with respect to Clairol's refund claim for that year.
Clairol's principal argument is that the nature and scope of its activities in New Jersey are so limited and insubstantial that this State may not constitutionally impose the corporate business tax upon it.
However, our examination of the record satisfies us that the evidence fully supports the Division's findings and conclusions to the contrary. The virtually uncontradicted evidence summarized in the Division's opinion establishes that Clairol exercises its corporate franchise in this State, owns and employs property in this State and maintains offices in this State to such an extent that "it can realistically be said that state government substantially affords protection and gives benefits to the corporation's enterprise within the state." Roadway Express Inc. v. Director, Division of Taxation, 50 N.J. 471, 483 (1967), appeal dismissed for want of a substantial federal question, 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968). In such circumstances the tax levied on Clairol is not subject to any constitutional infirmity.
*26 It is of no constitutional significance that Clairol's activities and property ownerships in New Jersey are substantially less than those of the taxpayers in Roadway Express, supra; they are sufficiently extensive to afford a constitutional basis for holding Clairol subject to the provisions of the Corporation Business Tax Act.
There is no claim that the tax imposed on Clairol is either discriminatory or not fairly apportioned. That being so, it is to be deemed valid as "a fairly apportioned, non-discriminatory means of requiring * * * [Clairol] to pay its just share of the cost of state government upon which it necessarily relies and by which it is furnished protection and benefit." Roadway Express, 50 N.J., at 491.
Clairol also contends that "P.L. 86-272, 15 U.S.C.A. § 381 et seq., expressly invalidates the net income portion of the tax and inferentially invalidates the net worth with portion of the tax."
Use of the words "net income" and "net worth portions of the tax" is a shorthand reference to the fact that pursuant to N.J.S.A. 54:10A-5, the measure of the tax levied against Clairol was the total of the tax computed on the basis of its allocated net worth and that computed on the basis of its allocated net income. For an explanation of the computation of the tax under the act, see Roadway Express, supra, at 476-477.
The computations for the years 1959 through 1963 are:

 Tax based on Tax based on
Year Net Worth Net Income Total Tax
---- ------------ ------------ ---------
1959 464.86 779.38 1244.24
1960 452.11 1147.97 1600.08
1961 445.06 1228.49 1673.55
1962 476.17 1674.58 2150.75
1963 625.64 2185.85 2811.49

15 U.S.C.A., §§ 381 and 383, provide in pertinent part as follows: *27 § 381.
(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
(1) the solicitation of orders by such person, or his representative, in such State for sales or tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivered from a point outside the State; and
(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

* * * * * * * *
(c) For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

Definitions
(d) For purposes of this section 
(1) the term "independent contractor" means a commission agent, broker, or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and
(2) the term "representative" does not include an independent contractor.
§ 383.
For purposes of this chapter, the term "net income tax" means any tax imposed on, or measured by, net income. Pub. L. 86-272, Title I, § 103, Sept. 14, 1959, 73 Stat. 556.
The federal act was passed in response to the decision of the United States Supreme Court in Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed. 421 (1959), upholding the validity of Minnesota's direct income tax as applied to a foreign corporation whose salesmen solicited orders for cement in that State, with *28 the orders being accepted in and the cement shipped from Iowa. See Eli Lilly and Company v. Sav-on-Drugs, Inc., 366 U.S. 276, 286, 81 S.Ct. 1316, 1322, 6 L.Ed.2d 288 (1961).
As noted in Roadway Express,
Shortly after the decision in Northwestern Cement, Congress passed P.L. 86-272 (1959), 73 Stat. 555, 15 U.S.C.A. § 381, et seq., denying the states the power to impose taxes on or measured by net income derived within the state from interstate commerce, if the only business activities carried on within the state are the solicitation of orders for sales of tangible personal property and the orders are sent outside the state for approval or rejection and are filled by shipment or delivery from a point outside the state. This very limited prohibition obviously does not apply to the taxpayers in the case at bar. The legislative approach being negative and not positive, we believe no inference may be drawn therefrom as to the power of the states to otherwise tax interstate commerce. This appears to be the view expressed in the report of the Senate Committee handling the legislation. U.S. Code Congressional and Administrative News, 86th Congress, First Session (1959) 2548, 2551. [50 N.J., at 490, No. 3; emphasis added]
There is no substance in Clairol's contention that the statute "inferentially invalidates the net worth portion of the tax." The federal act by its terms applies only to taxes on or measured by net income. Whatever may be the effect of the act on the portion of Clairol's tax measured by allocated net income, it has no effect on the portion thereof measured by allocated net worth.
Whether the federal act does invalidate the portion of the tax measured by allocated net income depends on whether Clairol's "only business activities within [the] State" are those described in § 381(a), the solicitation of orders. See Herff Jones Company v. State Tax. Comm., 247 Or. 404, 430 P.2d 998, 1001 (Sup. Ct. 1967):
Therefore, it seems clear that in order to come within the purview of P.L. 86-272 the only business activity which plaintiff's sales representatives could engage in is the solicitation of orders.
Implicit in the Division's determination that the federal statute "does not apply here" is the finding that Clairol's representatives in New Jersey do more than this: their activities *29 are not limited to the solicitation of orders. That conclusion is supported by the record.
The primary function of Clairol's detailmen and other representatives in New Jersey is to promote the public's purchase and use of its products. To accomplish that purpose, its salaried cosmetics detailmen assigned to visit retail druggists do so at regular intervals. One of a detailman's duties is to review the display of Clairol products and, as explained by one of them called as a witness by Clairol,
he may rearrange a promotion to where it looks the best for moving out the merchandise, or he may make up a little display on the counter for [the druggist] with the merchandise that is already present there.
The detailman also carries with him in his auto  furnished by the company and garaged in New Jersey where the detailmen live  promotion materials, various business forms, and in addition a supply of samples with a total value of about $125 which, according to the testimony of the detailman, is
used mostly for public relations, more or less. If you see a cosmetician doing a good job with your product, you generally try to give her something in reference to a compact or lipstick, and so forth.
In addition, if the retail store buyer grants permission, the detailman will take an inventory of the store's stock of Clairol products. "He shows the inventory to the buyer and from this inventory he writes up a suggestive order. Then the buyer will either phone in his wholesaler or will allow the representative to mail it to the wholesaler."
Clairol also has representatives who call on beauty salons that purchase Clairol products from "beauty jobbers," "salon wholesalers" to whom Clairol sells. Clairol's comptroller described the activities of its representatives who visit beauty salons thusly:
*30 [T]he detail people who call on the beauty salons have a technical background and they do very little as far as order taking. In other words, their big function is going into the local beauty salon to tell them how to use Clairol products. Or they may ask, "Have you had any problem with new Clairol product X? What has been your experience with it?" And maybe in teaching them new techniques, possibly. These people have a technical background, whereas the people calling on drugstores do not have a technical background. In other words, if someone asks them, "I did this and this to my hair," he wouldn't have the slightest idea.
Q. Now, these people do not work for Clairol, do they? A. That's right. They work for technical centers and they are referred to as technicians.
It is thus evident that Clairol's business activities in New Jersey extend beyond the mere solicitation of orders either on its own behalf or on behalf of its wholesalers.
That increased public favor of Clairol's products will eventually result in increased orders from retail druggists to wholesalers and from wholesalers to Clairol, or as in the case of its hair products from beauty salons to "beauty jobbers" and from the latter to Clairol, does not blanket all Clairol's activities with the protection afforded by the federal act to cases where the only business activity of the taxpayer is the solicitation of orders.
We are not persuaded to a contrary conclusion by the out-of-state cases cited by Clairol in support of its argument that the words "solicitation of orders" should be interpreted to encompass all of its activities in New Jersey.
Only Smith Kline & French Laboratories v. State Tax Comm., 241 Or. 50, 403 P.2d 375 (Sup. Ct. 1965), and State ex rel. Ciba Pharmaceutical Products Inc. v. State Tax Comm., 382 S.W. 2d 645 (Mo. Sup. Ct. 1964), lend any support to the argument. The broad interpretation of the word "solicitation" in the Smith Kline case has since been substantially narrowed, if not altogether repudiated, by later decisions of the Oregon Supreme Court. See Herff Jones Company v. State Tax Comm., 247 Or. 407, 430 P.2d 998, 1001 (Sup. Ct. 1967).
*31 The other two cases cited by Clairol  International Shoe Company v. Cocreham, 246 La. 244, 164 So.2d 314 (Sup. Ct. 1964), cert. den. Mouton v. International Shoe Co., 379 U.S. 902 (1965), and Oklahoma Tax Comm. v. Brown-Forman Distill. Corp., 420 P.2d 894 (Sup. Ct. Okla. 1966)  are of no relevance to the issue before us. Each involved only an unsuccessful attempt by the state taxing authorities to have the Federal statute adjudged unconstitutional.
The judgment of the Division of Tax Appeals dismissing the appeals of the petitioner for the years 1959 to 1963, inclusive, is affirmed.