LAEIO, J.T.C.
(retired and temporarily assigned on recall)
Pomco Graphics, Inc. (Pomco) challenges a final determination of the Director, Division of Taxation, declaring it to be subject to tax under the New Jersey Corporation Business Tax Act (CBT), N.J.S.A 54:10A-1 et seq., and directing Pomco to file corporate business tax returns for the tax years 1979 through all subsequent years to the present.
The facts have been stipulated and the matter is before the court on cross-motions for summary judgment. The pertinent stipulated facts relating to the activities of Pomco for the years involved follow:
*580 Pomco is a corporation of the Commonwealth of Pennsylvania having been incorporated on August 31, 1978, with its principal offices located in Philadelphia, Pennsylvania.
It has not applied for or received a certificate of authority to do business in any other state, including the State of New Jersey.
Pomco is engaged in the business of providing commercial printed material to customers, including items such as stationery, envelopes and business cards, general and custom-made calendars, swatch books, product instruction booklets, direct mail brochures, et cetera, upon a variety of paper stocks and using a variety of methods, including die-cut, embossing, foil-stamp, letterpress, lithography and engraving.
Pomco conducts its business activities on a fiscal year basis, with annual taxable periods commencing April 1 and ending March 31. As of the filing date of the within tax appeal, Pomco had filed Pennsylvania corporate tax reports and U.S. corporation income tax returns for the fiscal periods April 1, 1979 through March 1,1989. For periods April 1,1987 through March 31,1989, Pomco elected to report its federal taxes as a subchapter S corporation and its Pennsylvania taxes as a Pennsylvania S corporation.
During the periods 1978 through the present, Pomco has conducted its printing activities from premises located in Philadelphia, Pennsylvania. Its premises includes printing plants, warehouses and office space which have been occupied exclusively by Pomco. The facilities have been open Monday through Friday, from 8:00 a.m. to 11:00 p.m. They are not open to the public. During the relevant periods, Pomco did not own or lease any real property located in the State of New Jersey nor did it maintain any offices or have a registered agent for service of process within the State of New Jersey.
On August 1, 1978, Pomco registered with the New Jersey Division of Taxation (Division) for purposes of collecting and remitting New Jersey sales and use tax and it has made monthly *581 tax remittances and filed quarterly reports throughout the relevant periods to date.
On July 11, 1979, Pomco obtained a casino service industry license, issued by the New Jersey Casino Control Commission, which license has been renewed annually to date.
For the periods April 1, 1981 through March 31, 1988, Pomco filed annual reports of business activities with the State of New Jersey.
Commencing January 1,1987, Pomco has filed New Jersey litter control tax returns and remitted litter control tax payments to date.
During the periods at issue, Pomco marketed its printed materials by employing experienced salespersons, who presented the variety of printed materials offered by Pomco to both existing and prospective customers. During this time it employed 17 different salespersons from time to time who primarily visited customers and prospective customers in New Jersey. Other employees occasionally visited customers and prospective customers in New Jersey. Its salespersons were paid weekly salaries. At the end of each fiscal year, salespersons who surpassed individual sales forecasts were given an additional percentage in wages, based on amounts which exceeded individual annual sales forecasts.
Pomco’s sales representatives are responsible for initiating and maintaining business relationships with its customers, including companies located in New Jersey. For purposes of marketing its printed materials, Pomco’s sales employees make personal visits and telephone calls to customers and prospective customers, including customers located in New Jersey, either at the invitation or request of the customer or prospective customer or on their own initiative. The sales staff perform their duties under the supervision of a sales manager whose duties include review of sales and estimates and approval or disapproval of sales proposals presented to him for review.
Sales representatives work primarily in the field visiting customers and/or prospective customers. When in the field, the *582 representatives telephone the Philadelphia office daily to report the events of the day. Weekly meetings are also held between sales representatives and the sales manager at Pomco’s Philadelphia location to discuss new prospects, territory management and general account activities. Sales representatives are also required to telephone the office on a daily basis, at which time they discuss the events of the day as they pertain to general sales efforts.
Pomco’s sales representatives are not trained in the field, as only experienced individuals who have demonstrated an ability to successfully contact prospective customers and who may already have a following of customers for printed materials are hired by Pomco. Newly-hired sales representatives acclimate themselves to the procedures for completing order forms, procedures for submitting order forms for approval, etc., according to Pomco’s requirements at the Philadelphia office during an initial orientation period. Thereafter, the sales representatives are sent into the field.
When visiting customers and prospective customers, Pomco sales representatives conduct presentations and participate in discussions at product presentation meetings. Product presentation meetings involved a variety of subjects, depending upon the needs of the customer.
Activities which occurred at product presentation meetings included display and review of samples of printed material prepared by Pomco for other customers; detailed review of the proposed content and layout of printing work that the customer needs, including art, color and mechanical requirements; review and display of customer specific samples (for example, blue lines, dummies, press sheets and proofs) illustrating Pomco’s approach to the specific printing needs of the customer; discussion of Pomco’s price quotation for a specific job order or proposal; and discussion of the terms of the customer’s order, including price, quantities, production schedules and delivery of printed materials.
The average number of visits to Pomco customers and prospective customers would depend upon the potential for selling printed materials to a prospective customer or the known requirements of *583 Pomco’s existing customers. The duration of the visits would depend entirely upon the complexity of the jobs and the needs of the prospective or actual customer.
Pomco furnished to each sales representative a sample case to be used as a selling tool. The case showed samples of work produced in the four marketing areas in which Pomco has special expertise: stationery (letterheads, envelopes and business cards); calendars (both general and custom-made); paper (swatch books and direct mail for paper mills); and commercial items produced for the general business community which illustrate the variety of special manufacturing techniques that Pomco has to offer.
Each sales representative was instructed how to use the sample case as a visual tool to enhance presentation to prospective customers and to increase sales to existing customers. The sample cases were used daily by Pomco sales representatives in connection with visits to customers and prospective customers.
Pomco accepted orders at its Philadelphia office for printed materials from customers located in New Jersey. Upon acceptance of such orders, the printed materials were shipped by common carrier from Pomco’s Philadelphia office to destinations located in New Jersey.
During the years 1978 through 1987, Pomco made sales of printed materials to both non-casino and casino customers located in New Jersey. During this period 41 of its New Jersey customers were non-casino organizations or individuals and ten were licensed casinos.
Pomco’s New Jersey gross sales receipts were as follows:
NON-TAX CASINO YEAR RECEIPTS ANNUAL TOTALS CASINO RECEIPTS
1978 $ -0-
1979 48,228 16,625 64,853
1980 147,148 49,419 196,567
1981 257,986 15,694 273,680
1982 390,593 81,432 472,025
1983 175,779 303,611 479,390
1984 86,279 735,122 821,401
1985 306,507 461,862 768,432
1986 473,540 538,266 1,011,806
1987 538,000 435,317 937,317
*584 On June 22, 1988, Pomco was requested by the Division to complete a taxable status questionnaire which was received by the Division on July 18, 1988. Subsequently, the Division advised Pomco that it was subject to tax under the CBT and directed Pomco to file CBT returns for the short period July 11, 1979 through March 31, 1980 and for subsequent fiscal years 1981 through 1987. Pomco protested the determination and an administrative conference was held after which the Division issued a final determination dated October 2, 1989 upholding its initial finding. The instant proceeding is an appeal from that final determination.
Pomco contends that as the seller of tangible personal property it does not have a taxable status in New Jersey since its activities in New Jersey consist of nothing more than the solicitation of orders, which activities are protected from state taxation by reason of Congress’ adoption in 1959 of the Interstate Income Act, 15 U.S.CA § 381 et seq., which provides in pertinent part:
No State ... shall have power to impose, ... a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person ... are either ... of the following:
(1) The solicitation of orders by such person or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State____ [15 U.S.C.A. § 381(a), hereinafter referred to as § 381]
Thus, for Pomco to receive the protection afforded by this provision it must establish that its business activities within the State of New Jersey (1) consist of solicitation of orders; (2) for the sale of tangible personal property; (3) which are sent outside of the State for approval or rejection; and (4) all approved orders are filled by shipment or delivery from points outside the State. *585 Since the parties have stipulated that all orders are subject to approval outside New Jersey and such orders are filled by shipment or delivery from a point outside the State, the only issues remaining for determination are whether Pomco’s activities meet the first two requirements of the statute.
Defendant contends that Pomco is not entitled to protection from New Jersey taxation afforded by § 381 with respect to its New Jersey activities because: (a) it fails to meet the second element of the § 381 exclusion, which instructs that the prohibition on state taxation applies solely with respect to persons engaged in the sale of tangible personal property and (b) even if Pomco’s sales of printed material constitute protected sales as tangible personal property, Pomco, nevertheless, fails to meet the first element of the statutory exclusion because its business activities within the State, which included obtaining a casino license, exceed mere solicitation of orders, therefore, Pomco is not immune from the reporting requirements and the tax imposed by the CBT.

Sale of Tangible Personal Property.

The Division argues that as a practical matter, promotion of tangible personal property sales can be limited to making requests to purchase, “however, promotion of sales of services is more complex.” It claims that the stipulated facts establish that Pomeo’s employees sold Pomco’s professional printing services in this State, emphasizing Pomco’s ability to provide customized services designed to meet existing and prospective customers’ printing needs and preferences in four areas of expertise: stationery, calendars, paper and commercial items for the general business industry. Pomco prints stationery, envelopes, business cards, general and custom calendars, swatch books, product instruction booklets and direct-mail brochures on a variety of paper stocks using a variety of printing methods. It further claims that from the stipulated facts it is clear Pomco was engaged in the sale of commercial printing services and that the transfer of tangible personal property in connection with such sales was incidental to *586 its primary business activity, sales of services, and that sales of services are not immune sales transactions under § 381.
Since the term “tangible personal property” is not defined in the federal statute, defendant states that New Jersey’s Sales and Use Tax Act, N.J.S.A 54:32B-1 et seq., is instructive for purposes of construing this phrase. “Services,” the receipts of which are subject to sales tax, include:
[producing, fabricating, processing, printing or imprinting, tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property, not performed by him for resale, upon which such services are performed.
[N.J.S.A 54:32B-3(b)(l); (emphasis added by defendant) ].
Defendant argues that Pomco’s business activities clearly fall within this statutory definition of “services.”
Initially, the definition of words contained in a state statute cannot govern construction of federal legislation. See Bd. of Pharmacy v. Quackenbusch & Co., 22 N.J.Misc. 334, 39 A.2d 28 (C.P.1944).
Secondly, even if New Jersey’s sales tax definition of taxable “services” is to be considered, defendant’s conclusion that Pomco’s business activities are included therein, is incorrect. Defendant, in her argument here, has failed to differentiate between printing performed for a customer on tangible personal property furnished by the customer, as clearly defined by N.J.SA 54:32B-3(b)(l), and printing done by the vendor on material furnished by the vendor and sold by the vendor to the customer as a finished product.[1] In *587 the instant case, it is conceded that the printing is completed prior to sale on material furnished by Pomco and no separate charge is made; hence, Pomco’s printing performed solely on the materials is not taxable by New Jersey as “services” pursuant to N.J.S.A 54:32B-3 (b)(1).
Additionally, by reason of New Jersey’s granting exemptions from sales tax to receipts from retail sales of certain types of tangible personal property through adoption of section N.J.S.A 54:32B-3(b)(l), it has specifically included as taxable the services described therein performed on the exempt property. There exists no similar exemption to the immunity granted by § 381. “In the final analysis it is the statute as written that must govern.” Perez v. Pantasote, Inc., 95 N.J. 105, 114, 469 A.2d 22 (1984).
The term “tangible personal property” is not defined within § 381, therefore, its words are to be given their common ordinary meaning. Reliable Volkswagen Sales & Service Co. v. World-Wide Auto Corp., 216 F.Supp. 141 (D.C.N.J.1963). Webster’s New Collegiate Dictionary 1182 (1979), defines “tangible” as “capable of being perceived especially by the sense of touch; substantially real-material;” and Black’s Law Dictionary 1306 (5th ed. 1979) defines tangible personal property as “property such as a chair or watch which may be touched or felt in contrast to a contract.” Tangible personal property “is that which may be felt or touched; such property as may be seen, weighed, measured and estimated by the physical senses, that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights such as franchise, choses-in-action, copyrights, the circulation of a newspaper, annuities and the like.” 73 C.J.S. Property § 15 at 184 (1983). The customized printed material sold by Pomco is included within the above definitions of tangible, as contrasted with, intangible personal property.
*588 Although much of the property sold by Pomco contains customized printing, it is the finished product not the services, which is the primary and ultimate focus of the purchase.
The materials sold by Pomco are tangible personal property prepared to the customer’s specifications and their classification essentially is no different from sales of customized bank checks, greeting cards, wedding invitations, etc. containing the printed names of the purchaser—they all constitute sales of tangible personal property.
It is recognized that sales of these types of paper material are to be distinguished from the sales of professional services which include printed materials such as prepared wills, estate plans and inter vivos trusts. There the client is purchasing the services as reflected in the writings and not primarily the paper material. However, stationery consisting of legal paper, backers, and will envelopes containing the printed name of the law firm when purchased by the firm, is essentially a purchase of the stationery and not the printed services. Additionally, stock certificates, certificates of deposit, bank checks, bank deposit books, etc., containing the printed names of the owners, standing alone, constitute tangible personal property as distinguished from the intangible property each respectively represents.
Although New Jersey’s definition of this term is not binding in construing § 381, it is noted that New Jersey’s Sales and Use Tax Act specifically defines “tangible personal property” as “corporeal personal property of any nature.” N.J.S.A 54:32B-2(g). Based upon this definition which conforms with the common, ordinary meaning of this term, New Jersey collects monthly sales taxes on all of the sales made by Pomco to its New Jersey customers— sales taxed as “the receipts from every retail sale of tangible personal property.” N.J.SA 54:32B-3(a); (emphasis added).
I conclude that all the stipulated printed material sold by Pomco to its New Jersey customers constitute sales of tangible personal property within the meaning of § 381.

*589
Solicitation of Orders.

Pomco alleges that all of its business activities in New Jersey consist only of the solicitation of orders as contemplated and protected by § 381. The Division denies that Pomco is entitled to the taxable exclusion provided by this statute, alleging that Pom-co’s business activities within this State exceed solicitation of orders by virtue of its July 11, 1979 acquisition of a casino license issued by the New Jersey Casino Control Commission. Defendant asserts that, even if the acquisition of the license alone is insufficient, the license, coupled with Pomco’s accumulative business activities in this State exceed the solicitation of orders protection and, taken together, are not de minimis.
The United States Supreme Court recently construed the scope of protected solicitation under § 381 in Wisconsin Dept. of Rev. v. Wrigley, — U.S.-, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992). Prer-Wrigley, the problem was to determine whether a broad or narrow interpretation of “solicitation” applied. In Wrigley, the Supreme Court was urged to accept one of two polar arguments posed: “one, that ordinary and necessary business activities surrounding the solicitation of orders are part of the exempt solicitation itself (as urged by Wrigley); and the other, that the only exempt activities are those essential to the sale” (as proposed by Wisconsin). — U.S. at-, 112 S.Ct. at 2460, 120 L.Ed.2d at 194 (Kennedy, J., dissenting).
After concluding that the statutory term “solicitation” includes “not just explicit verbal request for orders, but also any speech or conduct that implicitly invites an order,” id. at-, 112 S.Ct. at 2453-2454,120 L.Ed.2d at 186, and that the “solicitation of orders” is a “subcategory, not of in-state acts, but rather of in-state ‘business activities’—a term that more naturally connotes courses of conduct,” id. at-, 112 S.Ct. at 2455,120 L.Ed.2d at 187, the court found between the two proposed extreme arguments and held:
(1) the standard for the statutory term, “solicitation of orders” generally includes those activities which are between “entirely ancillary to requests for purehasesthose that serve no independent business function apart from their connection to *590 the soliciting of orders—and those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force”.
[Id. at-, 112 S.Ct. at 2456, 120 L.Ed.2d at 189] and
(2) the determination “whether in-state activity other than ‘solicitation of orders’ is sufficiently de minimis to avoid loss of the tax immunity conferred by § 381 depends upon whether that activity establishes a nontrivial additional connection with the taxing State.”
[Id. at-, 112 S.Ct. at 2458, 120 L.Ed.2d at 191]
This court will first address the Division’s allegation that Pom-co’s in-state activities exceeded solicitation solely by virtue of its acquisition of a casino license.. It alleges that since Pomco had already developed a substantial presence in New Jersey through established business relationships with at least 13 non-casino clients, by its subsequent acquisition and annual renewal of its casino license Pomco voluntarily exercised its franchise privilege whereby it was able to exploit the closely regulated casino industry thereby extensively broadening its share of the New Jersey commercial printing market. The Division argues that Pomco clearly gained an advantage over its competitors who did not or could not obtain the license and that its activities were more than ancillary solicitation of orders.
Pomco’s sole purpose in securing a casino license was to enable it to legally solicit orders for its paper products from New Jersey’s casinos. The acquisition of a casino license is required “conduct” to solicit an order. ‘We think it evident in this statute the term [solicitation] includes ... any ... conduct that implicitly invites an order.” Id. at-, 112 S.Ct. at 2454, 120 L.Ed.2d at 186. I conclude that the acquisition of a casino license is a statutory requirement imposed by the State of New Jersey which is clearly ancillary to solicitation of orders and it is not an in-state business activity beyond the protection of § 381. Although New Jersey may qualify and regulate a person seeking to solicit business from New Jersey casinos, it may not utilize such laws to disqualify that person from the federal immunity granted by § 381. It may not do indirectly that which it is prohibited from doing directly. “§ 381 unquestionably does limit the powers of States to tax companies whose only in-state activity is ‘the solicitation of orders’.” Ibid. However, where the only business activity of a *591 person is the “solicitation of orders” within this State, neither the acquisition and renewal of a casino license, which expands the seller’s market base, nor the receipt of a certificate of authority to collect New Jersey sales and use tax, is sufficient to deny Pomco immunity from tax under § 381.
Next to be examined is the Division’s claim that Pomco’s business activities in this State exceed the solicitation of orders and, if so, whether they are de minimis.
In Wrigley, supra, the activities deemed non-ancillary, thereby removing it from the protection of § 381, were
(1) the replacement of stale gum by sales persons [“Wrigley would wish to attend to the replacement of spoiled product whether or not it employed a sales force,”]
(2) the supplying of gum through “agency stock checks” [“It might seem that setting up gum-filled display racks, like Wrigley’s general advertising, would be immunized by § 381(a)(2). What destroys this analysis, however, is the fact that Wrigley made the retailers pay for the gum, thereby providing a business purpose for supplying the gum quite independent from the purpose of soliciting customers,”] and
(3) the storage of gum in Wisconsin [“because the vast majority of the gum stored was used in connection with stale gum swaps and agency stocked checks, that storage (and the indirect rental of space for that storage) was in no sense ancillary to ‘solicitation.’”]
[— U.S. at---, 112 S.Ct. at 2458-2460, 120 L.Ed.2d at 192-193]
These activities were not de minimis.[2]
New Jersey has heretofore held that technical representatives of an out-of-state company who call on beauty salons which purchase the company’s products and tell them how to use the products were engaged in business activities that extended beyond the mere solicitation of orders, thus losing the protection afforded by § 381. Clairol v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.1970), aff'd o.b., 57 N.J. 199, 270 A.2d 702 (1970), app. *592 dism., 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971).[3] In Glide Studios, Inc. v. Taxation Div. Director, 2 N.J.Tax 365 (Tax 1981), this court held that a Pennsylvania corporation engaged in soliciting orders for school photographs, by taking the photographs and accepting payments within this State, went beyond solicitation of orders within the immunity from taxation granted by § 381.
Here we have no business activities by Pomco comparable to those in Clairol and Glide Studios. At the customer’s invitation or on their own initiative, Pomco’s salesmen marketed its printed materials by making telephone calls and personal visits at which time they conducted product presentations. Pomeo’s New Jersey activities which are claimed to exceed solicitation of orders specifically include:
display and review of printed material samples printed by Pomco for other customers; detailed review of proposed content and layout of printing work ordered by customer (artwork, colors, mechanical requirements); review and display of customer specific samples (for example, blue lines, dummies, press sheets and proofs); Pomco’s illustration of its approach to the specific printing needs of the customer; discussion of Pomco’s price quotation for a specific job order or proposal; and discussion of the terms of the customer’s order, including price, quantities, production schedules and delivery of printed materials.
The Wrigley Court stated: “We think it evident that in this statute the term [solicitation of orders] includes, not just explicit verbal requests for orders, but also any speech or conduct that *593 explicitly invites an order.” — U.S. at---, 112 S.Ct. at 2453-2454, 120 L.Ed.2d at 186; (emphasis added). The activities specifically objected to by the Division as exceeding solicitation of orders were heretofore stipulated by the parties as having “occurred at product presentation meetings.” A product presentation meeting certainly occurs prior to the placing of orders and the activities objected to were unquestionably speech and conduct that explicitly invited orders. The term “solicitation” includes the entire process associated with inviting an order and a salesman’s product presentation meeting “is part of the solicitation of orders; because the only reason to do it is to facilitate requests for purchases.” Id. at---—, 112 S.Ct. at 2457, 120 L.Ed.2d at 189-190.
I find that all of Pomco’s New Jersey activities including those specifically objected to by defendant are entirely ancillary to request for purchases-those that serve no independent business function apart from their connection to the soliciting of orders, and they are not activities that Pomeo would have reason to engage in anyway but chose to allocate to its in-state sales force. I conclude that all of the activities performed by Pomco’s salesmen within New Jersey constituted the solicitation of orders within the meaning of § 381, and therefore, these business activities are immune from taxation by the State of New Jersey.

The New Jersey Corporation Business Tax Act, N.J.S.A 54:10A-1 et seq.

The Division, nevertheless, additionally urges that Pomeo is subject to tax under the CBTA for the privilege of exercising its corporate franchise and/or doing business in this State pursuant to N.J.S.A. 54:10A-2, as defined by N.J.A.C. 18:7-1.1 et seq.
The Division directs my attention to that fact that under the CBT “every foreign ... corporation ... shall pay an annual franchise tax for the privilege ... of doing business ... in this State ...,” N.J.S.A 54:10A-2, “regardless of whether it has formally qualified or is authorized to do business in New Jersey.” N.J.AC. 18:7-1.8. By regulation, every foreign corporation “holding a ... license ... issued by any state ... agency authorizing *594 the corporation to engage in corporate activity within this State ... or doing business in this State ...” is required to file a CBT return and pay a tax thereunder. N.J.AC. 18:7-1.6(a).
Based thereon, the Division claims that Pomco by reason of its having sold printing services to non-casinos combined with its having obtained a casino license and exercising its franchise right of selling its printing services to licensed casinos, was, in fact, doing business within this State thereby subjecting it to be taxed under the CBT even though it never procured a New Jersey corporation franchise certificate. In support of its position, it cites Mark Andy, Inc. v. Taxation Division Director, 8 N.J.Tax 593 (Tax 1986) and Thomson-Leeds Co. v. Taxation, Division Director, 8 N.J.Tax 24 (Tax 1986), both of which held plaintiffs to be subject to tax under the CBT by reason of their respective in-state business activities. Defendant’s reliance upon these two cases is completely misplaced since therein a claim that plaintiffs’ business activities were immune from State taxation under the protection of § 381 was neither pleaded, argued nor decided.
In support of its claim that Pomco’s varied and expanded business activities within this State subjected it to tax under the CBTA, the Division completely ignores and fails to. address the immunity to taxation granted by § 381 which expressly exempts those covered activities. Neither § 381 nor Wrigley places any limitation on the extent of a person’s solicitation activities or the financial benefits he may receive from the 381 exemption. Also, regular and continuous solicitation in and of itself does not create nexus. Quill Corp. v. North Dakota, — U.S. -, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992).
This court finds these additional arguments presented by the Division to be completely without merit; they are no more than paraphrased reiterations of the Division’s prior positions heretofore raised and repudiated under “solicitation of orders”, therefore they are summarily rejected.
It is concluded that all of Pomco’s business activities within New Jersey constitute the “solicitation of orders” within the meaning of § 381. Therefore, Pomco is immune from the tax imposed under *595 New Jersey’s CBTA. That part of the Division’s final determination order of October 2, 1989 declaring Pomco to be taxable under CBTA with respect to its net income is reversed and declared null and void.
It is ordered that judgment be entered accordingly.

 The Division has heretofore acknowledged this distinction by its ruling that a monogram placed on clothing prior to its sale is not a separately taxable service under the Sales and Use Tax Act, but rather is incorporated into the ultimate sale of the clothing. "The Division of Taxation has determined that if a monogram is placed on exempt clothing prior to its sale, then there is no sales tax liability for the complete price of the clothing with the monogram on it. If, however, the monoyamming is done separately by the vendor for a separate charge, the charge for this service would be taxable under N.J.S.A. 54:32B-3(b)(l). In addition, the charges for monogramming on sporting goods or other taxable items furnished by the customer would be subject to the New Jersey sales tax. Monogramming includes the application of decals, logos, etc. (pictures or letters) by means of sewing, printing, imprinting or through a silk screening process.” *587 [Emphasis added] Volume 13 # 1 [13 State Tax News 22 (January/Februaiy 1984); (emphasis added)]

 Justice O'Connor concurred in part with the opinion and concurred in the judgment but she did not agree that the replacement of stale gum served an independent business function. However, she did agree with the majority that the storage of gum in the state and the use of agency stock checks were not ancillary to solicitation nor were they de minimis. Justice Kennedy dissented (joined by the Chief Justice and Justice Blackman) believing that a broad interpretation of "solicitation” applies and considered all Wrigley's activities within Wisconsin to be part of solicitation.

 In its brief in Wrigley, supra, Wisconsin cited Clairol v. Kingsley, supra, as supporting "the position that an out-of-state company forfeits its § 381 immunity if it engages in 'any activity other than requesting the customer to purchase the product.' " -U.S. at-, 112 S.Ct. at 2454, 120 L.Ed.2d at 186. The Wrigley Court commented thereon as follows:
Amici New Jersey, et al. contend that our summary disposition of Clairol binds us to this narrow construction of § 381(a). Though Clairol is frequently cited for this construction, the opinion in the case does not in fact recite it. In any event, our summary disposition affirmed only the judgment below, and cannot be taken as adopting the reasoning of the lower court, [citations omitted] The judgment in Clairol would have been the same even under a broader construction of “solicitation of orders” since the company’s in-state activities included sending nonsales representatives to provide customers technical assistance in the use of Clairol products.
[Id. at-n. 2, 112 S.Ct. at 2454 n. 2, 120 L.Ed.2d at 186 n. 2]