NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

DONNA PORCARO,

Plaintiff

v.

DIRECTOR, DIVISION OF TAXATION,

Defendant.

TAX COURT OF NEW JERSEY
DOCKET NO. 012296-2020

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: May 31, 2024

Donna Porcaro, a self-represented party.

Linzhi Wang, for defendant
(Matthew J. Platkin, Attorney General of New Jersey, attorney).

BEDRIN MURRAY, J.T.C.

I.    Introduction

This is the court's opinion following a plenary hearing conducted in the above-captioned matter. Plaintiff, Donna Porcaro ("plaintiff"), challenges defendant, Director, Division of Taxation's ("defendant") denial of her claim for a refund of income tax withheld from wages reported on her 2016 New Jersey Gross Income Tax return. Defendant contends that plaintiff's protest of the refund denial notice was untimely and accordingly, filed a motion for summary judgment seeking dismissal of the complaint for lack of subject matter jurisdiction, under R. 4:6-2(a).

1

In denying defendant's motion for summary judgment, the court concluded that a plenary hearing was needed to determine if plaintiff would be able to overcome the presumption of receipt that attaches to defendant's December 21, 2017 refund denial notice ("final determination letter"), under N.J.S.A. 54:50-6(a). Defendant's December 21, 2017 final determination letter contains the taxpayer appeal instructions and triggers the countdown to file a protest or an appeal, under N.J.S.A. 54:49-18.

Plaintiff maintains she did not receive the final determination letter, despite having received three prior communications from defendant with respect to her 2016 New Jersey Gross Income Tax ("GIT") return, mailed to the same address. Further, plaintiff contends that she first became aware of the issuance of the final determination letter when she received a copy of it from an unnamed Division of Taxation employee more than two years later. Plaintiff admits that, as a result, she submitted a protest letter well past the ninety-day filing deadline.

Defendant contends the final determination letter was properly addressed and mailed to plaintiff's residence, and a presumption of its receipt attaches under N.J.S.A. 54:50-6(a).

For the reasons set forth below, the court concludes that defendant has established a presumption of receipt attaches to the December 21, 2017 final

determination letter. As such, the court concludes that plaintiff's protest filed more than two years late is untimely, requiring dismissal of the complaint.

II.     Preliminary Findings of Fact and Procedural History

On November 5, 2020, plaintiff filed a complaint with the Tax Court challenging defendant's final determination letter.

Plaintiff was placed on a thirty-day administrative leave after her involvement in a shooting incident that took place on December 14, 2015, while on duty as a police officer. After the conclusion of her administrative leave on or about January 12, 2016, plaintiff remained out of work due to injury or illness associated with the incident, until her retirement on or about November 1, 2016. She continued to receive her full salary during this period of time.

In her complaint, plaintiff contends the wages she received while out of work were erroneously treated as taxable income by her employer, and income taxes withheld from those payments.

On or about February 3, 2017, after plaintiff filed her 2016 GIT return, the parties engaged in a series of written communications regarding this issue. Plaintiff requested defendant refund the income tax withheld.

On April 3, 2017, defendant sent plaintiff a letter requesting that she submit copies of her W-2 and/or 1099 statement(s) within thirty days. Plaintiff timely replied.

On April 21, 2017, defendant responded, advising that in order to obtain a refund of the income taxes withheld, plaintiff would need to supply proof that her employer was reimbursed for part or all of her wages through a workers' compensation program or other such plan. Plaintiff provided documents demonstrating that her employer was reimbursed for part of the wages she was paid while out of work. In all, three wage reimbursements had been made to plaintiff's employer totaling approximately $16,000.

By letter dated December 13, 2017, defendant acknowledged receipt of plaintiff's documentation, and notified her that her 2016 taxable income had been adjusted accordingly. Plaintiff received a refund in the amount of $6,005. The letter advised that she would be receiving an additional refund by paper check. In addition, the letter instructed plaintiff to supply defendant with proof, if any, of further reimbursements to her employer.

Plaintiff responded to defendant's December 13, 2017 letter on the same day, however, she submitted duplicate information rather than new information that might further reduce her taxable income. As a result, on December 21, 2017, defendant issued its fourth and final letter to plaintiff advising that no further reduction of her taxable wages would be permitted, and that this determination would be final unless she submitted a written protest within ninety days. Thus, plaintiff's protest was due on March 21, 2018.

4

Plaintiff did not file a protest within the ninety-day appeal period. She contends she did not receive the December 21, 2017 final determination letter, although it was mailed to the same address as the three prior letters. Plaintiff noted she would have timely responded to the letter in the same manner she responded to the three prior notices.

No other written communications were exchanged between the parties for more than a two-year period. Instead, plaintiff asserts she engaged in a series of telephone calls with defendant's representatives, where she received differing answers as to the time within which she had to pursue her claim. Further, plaintiff claims she repeatedly asked defendant's representatives for copies of all documents in her file pertaining to her refund request, and that she finally received copies of all four letters in one packet, sometime between March and May 2020. She could not identify the party who sent her the letters. Plaintiff contends this was the first time she saw the final determination letter with appeal rights.

On June 2, 2020, plaintiff faxed defendant a cover letter with sixteen pages of documentation attached in support of her refund claim.

By letter dated October 21, 2020, defendant informed plaintiff that her June 2, 2020 protest was filed more than twenty-six months out of time. In addition, plaintiff was advised that if she disagreed with defendant's determination of

untimeliness, she could file a complaint with the Tax Court within ninety days of the date of the notice.

As previously noted, plaintiff filed a complaint with the Tax Court on November 5, 2020. Thereafter, plaintiff provided defendant with some discovery, including copies of the four letters she asserts she obtained between March 2020 and May 2020 from defendant.

Defendant then filed a motion for summary judgment seeking dismissal of plaintiff's complaint for untimeliness. In support of its motion, defendant offered the certification of Thomas Hepp ("Hepp certification"), its supervising auditor. Mr. Hepp certified, in part, that defendant issued a [final determination letter] to plaintiff on December 21, 2017. The exhibits attached to his certification included copies of the April 3, 2017, April 21, 2017, December 13, 2017, and December 21, 2017 letters sent to plaintiff, certified as true copies of the original documents. However, the photocopies of the December 13, 2017 letter and December 21, 2017 final determination letter at issue each show the image of plaintiff's finger. Plaintiff had inadvertently captured her finger when she photocopied the letters, which she then supplied to defendant in discovery.

At oral argument on defendant's summary judgment motion, plaintiff asserted that defendant's use of her copy of the December 21, 2017 final determination letter, attached to the Hepp certification, was evidence that defendant

6

did not have in its possession a clean copy of the original letter. She further suggested that this was proof the letter was not mailed to her on December 21, 2017.[1] Defendant's counsel did not offer an explanation as to why the image of plaintiff's finger appeared on the exhibits attached to Mr. Hepp's certification. The court concluded it needed to make additional factual findings in order to determine if the presumption of plaintiff's receipt of the letter was overborne or established, as urged by plaintiff and defendant, respectively.

III.     Additional Findings of Fact – Plenary Hearing

At the plenary hearing, plaintiff testified that she received and timely responded to the April 3, 2017, April 17, 2017, and December 3, 2017 letters, which were all addressed to her residence. She maintained that she did not receive the December 21, 2017 final determination letter. However, defendant offered evidence that plaintiff did receive an additional refund check, as promised in the December 13, 2017 letter, which was mailed to plaintiff in a separate envelope on December 21, 2017. At the hearing, plaintiff first testified that the refund monies were directly deposited to her bank account. When shown a copy of the December 21, 2017 check which contained her mailing address on its face, and her signature endorsement on the back, plaintiff acknowledged her signature but did not recall receiving or

---

[1] There is no dispute, however, that plaintiff received the December 13, 2017 final determination letter, which also contained the finger image and was attached to the Hepp certification.

7

depositing the check. The record reveals the check was deposited by plaintiff on December 27, 2017.

In addition, plaintiff could not pinpoint the date of her receipt of the four letters from defendant, stating that it might have been in May 2020. During oral argument on defendant's motion for summary judgment, as noted above, plaintiff stated she received the packet of letters between March and May 2020. At the plenary hearing, she testified that she did not retain the postmarked mailing envelope containing the letters. She also stated that she photocopied the letters before sending them to defendant, inadvertently capturing the image of her finger on the December 13, 2017 letter and December 21, 2017 final determination letter. The December 21, 2017 final determination letter bears the ink, or "wet" signature of Mark Huston.

Defendant's witness, Mark Huston, testified that he has been employed by defendant since October 2010, and in 2017 was assigned to the taxpayer accounting branch as a taxpayer representative. Currently, he works in another unit with the Division of Taxation. Mr. Huston testified that his job duties as a taxpayer representative included receiving and responding to taxpayer inquiries. Typically, a taxpayer with a tax-related issue would first write to a legislator, the Governor's office, or contact defendant's call center, which is a separate unit from the taxpayer accounting branch. These inquiries would then be forwarded to a taxpayer representative. Mr. Huston testified that plaintiff's case was assigned to him on

December 13, 2017 as a referral from the call center, as documented in his notes produced at the hearing. The established procedure is for the taxpayer representative to record notes, known as tax registration notes, documenting each phone call made or referral received on the date of such event. The notes are electronically dated; neither the date stamp nor the notes entered can be changed or deleted. Mr. Huston produced all tax registration notes entered regarding plaintiff's case, including his own notes entered on December 13, 2017, the date of plaintiff's referral to him, and on December 21, 2017.

Mr. Huston testified that plaintiff's 2016 GIT return, filed in February 2017, was flagged for review because she reported receiving no wages for tax year 2016, yet her employer reported wage withholdings totaling approximately $16,000 for the same time period. Further, plaintiff had requested a full refund of the withheld sum. The notes document that plaintiff's case was initially referred to the taxpayer accounting branch on March 16, 2017. The notes further reflect the initial letter dated April 3, 2017 was sent to plaintiff, along with a response received on April 7, 2017, wherein she provided a copy of her W-2 form and explained the circumstances of her work injury. An April 18, 2017 entry notes that plaintiff's account was adjusted to reflect certain reimbursements made to her employer for wages paid to her while she was on administrative leave. Defendant's second letter to plaintiff

dated April 21, 2017 is also documented in the notes, wherein proof of additional reimbursements to plaintiff's employer was requested.

Mr. Huston's December 13, 2017 entry documenting receipt of proof of three wage reimbursements to plaintiff's employer followed. Mr. Huston testified that, given the additional documentation provided by plaintiff, he adjusted her taxable wages and sent her the December 13, 2017 letter informing her of same. That letter also advised plaintiff to send proof of additional reimbursements to her employer, if any. As the letter was merely informational and did not contain appeal rights, he did not sign it. The bottom of the letter, however, bears his initials, "MH".

In response, plaintiff submitted duplicate information as reflected in Mr. Huston's December 21, 2017 notes, which state: "12/21/17 CSC Referral: Recd Duplicated Info. No Adj, Final Det Ltr Sent." Expounding on the note entry, Mr. Huston testified that he prepared the December 21, 2017 refund denial letter with appeal rights, printed it, and signed it in ink. He explained that a letter containing appeal rights received a wet signature. He placed the letter into an envelope and wrote plaintiff's name and correct mailing address with zip code on the envelope. The recipient's mailing address was the same as used on all prior written communications. The correct return address appeared in a window. Mr. Huston sealed and stamped the envelope, and at the end of the day deposited the letter in the mail processing facility, where all the mail is retrieved by the mail clerk. He testified

10

that if the letter was undeliverable, it would have been returned to him, which it was not.

In addition, Mr. Huston detailed defendant's document retention policy that was in effect in 2017. In short, he personally retained his original letters bearing his ink signature in his desk drawer at the Trenton office for between six to twelve months. Hence, he was the sole person with a physical copy of the December 21, 2017 signed letter. He destroyed the paper file in late December 2018; therefore, he could not have produced a copy of the signed letter at any time thereafter, nor could any other employee at the Division of Taxation. He did, however, as a matter of practice save an electronic version of the unsigned refund denial letter on his hard drive or on a non-public network drive accessible only to him and defendant's information technology staff. He maintains these electronic files to date. Mr. Huston testified that another employee could not have, without his knowledge, printed a copy of the electronically saved, unsigned letter. Moreover, Mr. Huston testified that he did not receive a request in 2020 asking for the letter, or he would have memorialized the request in the tax registration notes.

The next note entered after Mr. Huston's December 21, 2017 note is dated July 10, 2020, entered by another employee, and documents that plaintiff filed a protest. The following note in plaintiff's case file is dated October 20, 2020, and documents that a letter dated October 21, 2020 was sent to plaintiff by certified mail,

11

return receipt requested, advising her that her protest was untimely and containing appeal rights. The final notation in defendant's tax registration notes with respect to plaintiff's case is dated May 10, 2023, and documents Mr. Huston's issuance of a check tracer for the purpose of locating a copy of the check issued to plaintiff on December 21, 2017. As mentioned above, that check was mailed on the same day as the final determination letter at issue, under separate cover, and deposited by plaintiff on December 27, 2017.

During cross-examination, plaintiff showed Mr. Huston a printout of phone calls she made on certain dates between January and April, with no year listed. Plaintiff accessed the list through her account with her phone carrier. She stated that the calls were made to defendant's call center in 2018 in connection with her 2016 GIT return. Mr. Huston confirmed that the telephone numbers listed on plaintiff's printout were, in fact, the call center numbers. Plaintiff contends that during her many telephone calls to the call center, no one advised her that she had ninety days to appeal the denial of her refund. Further, plaintiff pointed out that none of her calls to the call center, which were listed on the printout she offered, resulted in the entry of a note by defendant. Mr. Huston responded that the call center is designed to provide taxpayer information services, and is a separate branch from the taxpayer accounting branch where he was assigned. In short, he could not testify as to the procedures in the call center, other than to state that when the call center receives

documentation, it is referred to the taxpayer accounting branch. There was no evidence that the purported telephone calls were referred to the taxpayer accounting branch. It is also noted that plaintiff was unable to name a single person she spoke with during any of the listed phone calls, nor did she provide any other documentation, such as notes made, with respect to the phone calls.

In evaluating the documentary and testimonial evidence provided by the parties, the court finds the testimony of defendant's witness, Mark Huston, to be clear, forthright, and fully responsive to all questions asked on direct and cross-examination, and by the court. Mr. Huston provided a complete and credible explanation of the procedures he utilized in the taxpayer accounting branch, without hesitation, supported by persuasive documentation found in the tax registry notes regarding plaintiff's case. In addition, Mr. Huston provided detailed testimony concerning his preparation of the December 13, 2017 and December 21, 2017 letters, and the steps he took in addressing the latter, and depositing it in the mail processing facility. In short, the December 21, 2017 final determination letter was mailed to plaintiff at her proper address, which is the same address used in the three prior communications mailed to and received by plaintiff.

Finally, the court finds credible Mr. Huston's testimony concerning defendant's document retention policies that were in place during his tenure in the taxpayer accounting branch. Specifically, the court finds that the December 21,

13

2017 final determination letter bearing his ink signature could have only generated from him, and that no other individual could have provided a signed copy of the letter to plaintiff at any time. Further, the court finds that by the end of 2018, Mr. Huston destroyed the file containing the signed letter, signifying that even he could no longer produce a signed copy.

Conversely, plaintiff could not produce the mailing envelope she testified contained the signed December 21, 2017 letter, nor was she able to name the person who was responsible for mailing her the packet of four letters. On balance, the evidence does not support a finding that the letter at issue was delivered to plaintiff between March 2020 and May 2020. Instead, the court finds that the signed December 21, 2017 final determination letter bearing the image of plaintiff's finger, which she supplied to defendant during discovery, was received by her in the ordinary course of its mailing on or about December 21, 2017.

IV. Conclusions of Law

The legal standard governing service of notice by defendant is set forth under the State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54:54-6 ("UPL"). Therein, N.J.S.A. 54:50-6(a) provides in part: "Any notice required to be given by the director pursuant to the [UPL] may be served personally or by mailing the same to the person for whom it is intended, addressed to such person at the address given in the last report filed by that person . . . ." N.J.S.A. 54:50-6(a). Also, "[t]he mailing

of such notice shall be presumptive evidence of the receipt of the same by the person to whom it was addressed." Ibid. A refund determination notice, which is the type of notice at issue, is included in the list of notice types contemplated by the statute. N.J.S.A. 54:50-6(d).

In the matter before the court, a plenary hearing was held to determine if plaintiff was able to overcome the presumption of receipt that attaches to defendant's December 21, 2017 final determination letter under N.J.S.A. 54:50-6(a). The plenary hearing was preceded by defendant's motion for summary judgment, which was denied due to the need for further fact finding, including credibility determinations, regarding the mailing of the subject letter. Given the strength of defendant's documentary and testimonial evidence, as set forth more fully above, plaintiff is unable to overcome the presumption of receipt that attaches to the December 21, 2017 final determination letter with appeal rights. The letter was addressed to plaintiff at the address given in her 2016 GIT return, which was her last report filed. It was the same address used by defendant in the successful mailing of four other letters, the last one mailed on the same date as the final determination letter. Mr. Huston personally prepared the subject letter, printed it, and signed it. He then placed it in an envelope, wrote plaintiff's mailing address on it, checked to see the return address in the window portion of the envelope, affixed a stamp to the

15

envelope, and deposited it in the mail processing facility.[2]  He testified that he did not receive the letter back as undeliverable.

Having concluded that plaintiff's presumption of receipt of the final determination letter  with appeal rights has not been rebutted and stands intact, the court turns to the issue of whether plaintiff's protest is untimely, thereby depriving the court subject matter jurisdiction.

N.J.S.A. 54:49-18(a) provides in part:

> If any taxpayer shall be aggrieved by any finding or assessment of the director, [s]he may, within 90 days after the giving of the notice of assessment or finding, file a protest in writing signed by [herself] or [her] duly authorized agent, certified to be true, which shall set forth the reason therefor, and may request a hearing.  Thereafter the director shall grant a hearing to the taxpayer, if the same shall be requested and shall make a final determination confirming, modifying or vacating any such finding or assessment.
>
> [Ibid.]

---

[2]  It is noted that defendant did not supply an additional certification from the individual who collects the outgoing mail and deposits it with the U.S. Postal Service.  N.J.S.A. 54:50-6(a), which sets forth the legal standard governing service of notice by defendant, has not been interpreted by our courts.  Thus far, there is no interpretation of the word "mailing", which is used twice in N.J.S.A. 54:50-6(a) and carries significant weight.  To wit: "[t]he mailing of such notice shall be presumptive evidence of the receipt of the same by the person to whom it was addressed."  Ibid. (emphasis supplied).  In the present matter, there is no dispute that plaintiff received the December 21, 2017 final determination letter.  Therefore, the court does not need to analyze the import of this word under the factual circumstances of this case.  This is not to imply that such additional or other certifications as to mailing are unnecessary or irrelevant since matters involving mailing, delivery, and receipt are typically fact sensitive.

The ninety-day period for filing a protest runs from the time the plaintiff receives notice. Estate of Pelligra v. Dir., Div. of Taxation, 23 N.J. Tax 658, 663 (Tax 2008) (citing Liapakis v. State of New Jersey, Dept. of the Treasury, Div. of Taxation, 363 N.J. Super. 96 (App. Div. 2003) wherein the Appellate Division reversed the Tax Court, concluding the ninety-day statute of limitations for filing a Tax Court complaint runs from the date of receipt of the final determination).

Further, a protest or any other document "required to be filed within a prescribed period . . . shall be deemed to be delivered on the date of the United States postmark stamped on the envelope." N.J.S.A. 54:49-3.1(a).

Regarding appeals filed in the Tax Court, N.J.S.A. 54:51A-14(a) of the UPL mandates that "all complaints shall be filed within 90 days after the date of the action sought to be reviewed." Also, N.J.S.A. 54:51A-16 provides that the appeal process as set forth under the UPL "shall be the exclusive remedy available to any taxpayer" for review of any action taken by defendant. Ibid. Finally, R. 8:4-1(b) states that the time for filing a complaint in the Tax Court with regard to actions taken by defendant must be filed within 90 days of the date of said action.

The statutory time periods governing the review of tax matters are jurisdictional. McMahon v. City of Newark, 195 N.J. 526, 530, 544 (2008). As such, they are not subject to relaxation by the Tax Court. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 8:4-1 (2024). In F.M.C. Stores v. Borough

of Morris Plains, 100 N.J. 418, 424 (1985), the Court held that "[s]trict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government." These time constraints are immutable "in order to provide finality and predictability of revenue to state and local government." Bonanno v. Dir., Div. of Taxation, 12 N.J. Tax, 552, 556 (Tax 1992) (citing Pantasote, Inc. v. Dir., Div. of Taxation, 8 N.J. Tax 160, 164-66 (Tax 1988)). In Slater v. Dir., Div. of Taxation, 26 N.J. Tax 322, 333 (Tax 2012), the court noted prior holdings that "[t]he Tax Court lacks jurisdiction to hear the complaint of a taxpayer which was not filed until the day after the 90 day period." See Clairol, Inc. v. Kingsley, 109 N.J. Super. 22, 25 (App. Div. 1970); F.M.C. Stores, 100 N.J. at 423-25.

In this matter, defendant's December 21, 2017 final determination letter informed plaintiff that she had ninety days within which to file a protest or a complaint with the Tax Court. Hence, she needed to take action by March 21, 2018. Plaintiff, however, did not file a complaint protesting the final determination letter until June 2, 2020, rendering it untimely. As such, the court is without subject matter jurisdiction to adjudicate the merits of plaintiff's complaint, requiring it be dismissed with prejudice.

An Order and Final Judgment dismissing the complaint with prejudice will be entered separately.